80 A.3d 1186

COMMONWEALTH of Pennsylvania, Appellant,

v.

Nashir FISHER, Appellee.

Commonwealth of Pennsylvania, Appellant,

v.

Kinta Stanton, Appellee.

Commonwealth of Pennsylvania, Appellant,

v.

Ameer Best, Appellee.

Supreme Court of Pennsylvania.

Argued March 5, 2013.

Decided Oct. 30, 2013.

Hugh J. Burns Jr., Esq., Philadelphia, Peter Carr, Esq., Ronald Eisenberg, Esq., Philadelphia District Attorney's Office, Joseph E. McGettigan III, Esq., Rufus Seth Williams,

Esq., Office of the District Attorney of Philadelphia County, for Commonwealth of Pennsylvania.

Lee Mandel, Esq., Lee Mandel, P.C., for Nashir Fisher.

J. Michael Farrell, Esq., for Kinta Stanton.

Richard T. Brown Jr., Esq., Philadelphia, for Ameer Best.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

In this appeal, we are asked to determine whether conspiracy to commit third degree murder is a cognizable offense under Pennsylvania law. Because we hold conspiracy to commit third degree murder is a cognizable offense, we reverse the order of the Superior Court and remand for reinstatement of the sentences.

Appellees Fisher, Stanton, and Best were teenagers at the time of the offense. They traveled to downtown Philadelphia with two other male cohorts to get one young man's cell phone fixed. When that plan fell through, the group decided to "jump" the next person they saw, so their trip downtown would not have been "for nothing." Trial Court Opinion (Best), 2/2/10, at 2. The young men saw the 36–year–old victim walking alone in a subway concourse and decided to attack him. At the goading of his four friends, one of the young men struck the victim from behind. The others promptly joined the attack; they punched, kicked, and stomped on the victim's head and chest. Two Southeastern Pennsylvania Transportation Authority (SEPTA) police officers heard the commotion and responded. One officer heard Best say, "You bitch," and saw him punch the victim in the head. *Id.* The other officer heard laughter from the group as they engaged in the attack. The group scattered when the officers approached. One officer tried to help the victim, who was holding onto a railing and gasping for air. The victim lost consciousness and was taken to the hospital, where an exami-

nation revealed he suffered numerous contusions, abrasions, blunt force trauma, and fractured ribs. As a result of the beating, the victim suffered a fatal asthma attack.

Appellees and their two cohorts were apprehended and charged with involuntary manslaughter, third degree murder, and conspiracy to commit third degree murder. During individual police interviews, appellees admitted to participating in the attack. They were tried as adults in a joint jury trial, at which the Commonwealth introduced their police statements, the two SEPTA officers' testimony, and the testimony of one group member who pled guilty.[1] The jury convicted Fisher and Best of third degree murder and conspiracy to commit third degree murder, and convicted Stanton of involuntary manslaughter and conspiracy to commit third degree murder. Fisher and Best were each sentenced to 12½ to 25 years imprisonment for third degree murder, with a concurrent term of ten to 20 years imprisonment for conspiracy to commit third degree murder. Stanton received a sentence of 12½ to 25 years imprisonment for conspiracy to commit third degree murder, with a concurrent term of two and one-half to five years imprisonment for involuntary manslaughter.

Appellees filed individual appeals with the Superior Court. In a trio of memorandum decisions, the court affirmed the third degree murder and involuntary manslaughter convictions, but vacated the conspiracy to commit third degree murder conviction, concluding this offense was a legal nullity. *See Commonwealth v. Fisher*, No. 3583 EDA 2009, unpublished memorandum at 6, 24 A.3d 443 (Pa.Super. filed February 2, 2011); *Commonwealth v. Stanton*, No. 3497 EDA 2009, unpublished memorandum at 9, 24 A.3d 443 (Pa.Super. filed February 2, 2011); *Commonwealth v. Best*, No. 3273 EDA 2009, unpublished memorandum at 7, 24 A.3d 443 (Pa.Super. filed February 2, 2011). The court based its holdings on this Court's interpretation of *Commonwealth v. Clinger*, 833 A.2d 792 (Pa.Super.2003), contained in a parenthetical in *Commonwealth v. Weimer*, 602 Pa. 33, 977 A.2d 1103, 1105 (2009).

1. The other two members of the group entered guilty pleas to third degree murder.

*Weimer* involved the same issue as the present case: whether conspiracy to commit third degree murder is a cognizable offense. However, this Court did not reach the issue because the defendant was charged with and convicted of conspiracy to commit homicide generally; there was no gradation of homicide, as in the instant case. Accordingly, we concluded the conspiracy to commit homicide conviction was valid. We further noted the Superior Court dealt with various cases involving conspiracy and third degree murder, most of which held conspiracy to commit third degree murder was a cognizable offense. *See id.* (collecting cases). However, we also cited the Superior Court's decision in *Clinger* as a contrary holding, noting it stood for the proposition that "because it is impossible for one to intend to commit an unintentional act, it is impossible to commit [the] crime of conspiracy to commit third degree murder." *Id.* (citing *Clinger*, at 795–96).[2]

In the instant matter, the Superior Court concluded, "In light of our Supreme Court's reading of *Clinger*, we are compelled to conclude that the offense of conspiracy to commit third-degree murder is a legal nullity." *Fisher*, at 6 (footnote omitted); *Stanton*, at 9; *Best*, at 6–7. Accordingly, the court vacated appellees' convictions for conspiracy to commit third degree murder. In Fisher and Best's cases, the court held remand for resentencing was unnecessary because their conspiracy sentences ran concurrently with their third degree murder sentences, which were longer; therefore, the length of the aggregate sentences was unaffected. In Stanton's case, the court concluded remand for resentencing was necessary because Stanton's aggregate sentence was significantly reduced by vacation of the conspiracy conviction from 12½ to 25 years to two and one-half to five years.

Judge Olson filed identical dissenting memoranda in all three cases, opining since neither *Clinger* nor *Weimer* directly

2. Justice Todd, joined by Justice Saylor, dissented in *Weimer*, concluding the defendant had been convicted of conspiracy to commit third degree murder; accordingly, she would have ruled on the merits of the issue, holding conspiracy to commit third degree murder is not a cognizable offense, as one cannot intend to commit an unintentional killing. *See Weimer*, at 1109–12 (Todd, J., dissenting).

addressed whether conspiracy to commit third degree murder is a cognizable offense, any reference those cases made regarding the issue was *dicta.* The dissent noted *Commonwealth v. Johnson,* 719 A.2d 778 (Pa.Super.1998) (*en banc* ), "expressly held that a defendant *can* be charged with conspiracy to commit third-degree murder, reasoning that if murder is the natural and probable consequence of actions of a conspiracy done with malice, murder is not beyond the conspiracy." *Fisher,* at 1–2 (Olson, J., dissenting); *Stanton,* at 1–2 (Olson, J., dissenting); *Best,* at 1–2 (Olson, J., dissenting). Accordingly, the dissent would have held *Johnson* controlled, and would have affirmed appellees' convictions for conspiracy to commit third degree murder.

 The Commonwealth appealed, and we consolidated the cases for argument on the following issues:

1. Is conspiracy to commit third[ ]degree murder a cognizable offense under Pennsylvania law?

2. In the alternative, if conspiracy to commit third[ ]degree murder is not a cognizable offense under Pennsylvania's law, did the Superior Court contradict this Court's precedent by failing to modify the judgment to a cognizable offense, *i.e.,* conspiracy to commit aggravated assault?

*Commonwealth v. Fisher,* 614 Pa. 456, 38 A.3d 767 (2012) (*per curiam* ). As these are questions of law, our scope of review is plenary, and our standard of review is *de novo. Commonwealth v. Crawley,* 592 Pa. 222, 924 A.2d 612, 614 (2007) (citation omitted).

The Commonwealth claims the Superior Court essentially adopted the *Weimer* dissent's view, which noted "a key element of third[ ]degree murder is the absence of a specific intent to kill." *Weimer,* at 1111 (Todd, J., dissenting). According to the dissent, because "the essence of third[ ]degree murder is a homicide that occurs *in the absence of a specific intent to kill* [,] ... to be guilty of conspiracy to commit third[ ]degree murder, an individual would have to intend to commit an unintentional killing, a logical impossibility." *Id.,* at 1112. The Commonwealth contends this logic misses the

mark because lack of specific intent is not an element of third degree murder; the offense requires malice, which means the defendant recklessly, knowingly, or intentionally caused the victim's death. *See* Commonwealth's Brief, at 9–10 (citing 18 Pa.C.S. § 2502(c) (homicide statute does not specify requisite mental state for third degree murder); *id.*, § 302(c) (where statute does not prescribe culpability sufficient to establish material element of offense, such element is established if defendant acted intentionally, knowingly, or recklessly)). Therefore, the Commonwealth argues, as long as a defendant intended to facilitate a crime involving reckless or knowing behavior, he can be convicted of conspiracy to commit third degree murder.

The Commonwealth further posits where, as here, the evidence shows appellees possessed the highest mental state mentioned in § 302(c)—intentional conduct—when they agreed to attack the victim, the third degree murder conviction merely represents an act of mercy by the fact-finder, as the evidence was sufficient to support a first degree murder conviction. Therefore, a conviction for conspiracy to commit third degree murder is appropriate, as specific intent was shown. The Commonwealth criticizes the *Weimer* dissent's reliance on the American Law Institute's commentary to the Model Penal Code for the view that there cannot be a conspiracy to commit a crime for which the minimum required *mens rea* is negligence or recklessness; the Commonwealth notes although § 903 of the Crimes Code is derived from the Model Penal Code, the General Assembly has never adopted the commentary thereon. *See id.*, at 15 (citing *Commonwealth v. Brown*, 473 Pa. 458, 375 A.2d 331, 334 n. 4 (1977) (while comments to Model Penal Code may be helpful in interpreting statutes, they were not specifically adopted by legislature and therefore are not binding)).

In the alternative, the Commonwealth argues even if conspiracy to commit third degree murder is not a cognizable offense, the Superior Court erred in completely vacating the sentences for conspiracy to commit third degree murder; rather, the proper course would have been to modify the

sentences to be for the lesser-included offense of conspiracy to commit aggravated assault. The Commonwealth contends this course is consistent with an appellate court's statutory authority to modify an appealable order, as well as with precedent holding when an error affects only a discrete element of an offense, the proper remedy is to modify the judgment to a lesser-included offense not containing that element. *See id.*, at 18–19 (citing 42 Pa.C.S. § 706; collecting cases).

Appellees' arguments mirror the rationale of the *Weimer* dissent:[3] because conspiracy is a specific intent crime, and a key element of third degree murder is the absence of specific intent, it is a logical impossibility to agree to commit an unintended killing. Appellees also rely on cases holding attempted third degree murder is not a cognizable offense, analogizing these decisions' reasoning that because attempt is a specific intent crime, one cannot attempt to do something unintentionally. *See* Fisher's Brief, at 11 (citing *Commonwealth v. Williams*, 730 A.2d 507, 511–12 (Pa.Super.1999); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 456 A.2d 171, 177 (1983)).

Appellees further argue the Superior Court properly vacated their sentences for conspiracy to commit third degree murder. Appellees contend modifying their sentences to ones for conspiracy to commit aggravated assault would require the court to guess at what the jury believed; as the jury charge fused the elements of aggravated assault and third degree murder,[4] it is impossible to tell what the jury found concerning aggravated assault.

**3.** The majority of the argument in appellee Stanton's brief is a verbatim quotation of the *Weimer* dissent. *See* Stanton's Brief, at 11–16.

**4.** Although the bills of information charged appellees with third degree murder and conspiracy, and did not specify the criminal object of the conspiracy, *see* Bill of Information, 6/25/08, the trial court apparently permitted the Commonwealth to amend the information to include the criminal object and overt act. *See* N.T. Hearing, 7/20/09, at 10–11; N.T. Trial, 8/25/09, at 28. It is unclear, however, whether the criminal object was supposed to be aggravated assault or third degree murder. At trial, the court initially stated it would not charge the jury on aggravated assault, *see* N.T. Trial, 8/24/09, at 5; however, in its charge,

■ In determining whether conspiracy to commit third degree murder is a cognizable offense, we look first to the pertinent statutes. The Crimes Code defines conspiracy as follows:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

■ (e) Overt act.—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903(a), (e). Thus, "[t]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025, 1030 (1996) (citations omitted).

Section 2502 of the Crimes Code defines the three degrees of murder. This section sets forth the *mens rea* for first degree murder, *see* 18 Pa.C.S. § 2502(a) (an intentional killing), and defines second degree murder as that occurring

the court stated the information alleged aggravated assault was the object of the conspiracy, and charged the jury on aggravated assault. *See id.,* at 243–44; N.T. Trial, 8/25/09, at 25. The court further instructed the jury it could find appellees guilty of conspiracy to commit third degree murder if it found they shared the intent to commit aggravated assault on the victim and he was killed as a result of the assault. N.T. Trial, 8/24/09, at 244–45; N.T. Trial, 8/25/09, at 26–27. The verdict sheets only listed third degree murder as the object of the conspiracy.

during the perpetration of a felony. *See id.*, § 2502(b). Regarding third degree murder, however, the statute simply states, "All other kinds of murder shall be murder of the third degree." *Id.*, § 2502(c). Importantly, § 2502(c) does not set forth the requisite *mens rea* for third degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts *intentionally, knowingly or recklessly* with respect thereto." *Id.*, § 302(c) (emphasis added).

Case law has further defined the elements of third degree murder, holding:

> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but ... [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Santos*, 583 Pa. 96, 876 A.2d 360, 363 (2005) (alteration in original) (internal citation, quotation, and emphasis omitted); *see also Commonwealth v. Drum*, 58 Pa. 9, 15 (1868) (defining malice as quoted above). This Court has further noted:

> [T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312, 317 (2001) (quoting *Commonwealth v. Young,* 561 Pa. 34, 748 A.2d 166, 174–75 (1999)).

Accordingly, the Commonwealth is correct that absence of specific intent to kill is not an element of third degree murder; rather, such crime is an intentional act, characterized by malice, that results in death, intended or not. Appellees and the Superior Court beg the question—in stating an element of the crime of third degree murder is an unintentional killing, and one cannot intend an unintentional act, they misstate the elements of third degree murder. True, the intent to kill is a defined element of first degree murder—this does not mean an element of third degree murder is the polar opposite of intent to kill, such that the Commonwealth must prove a lack of intent to kill to convict of third degree murder. The Commonwealth has no such obligation; evidence of intent to kill is simply irrelevant to third degree murder. The elements of third degree murder absolutely include an intentional *act,* but not an act defined by the statute as intentional murder. The act sufficient for third degree is still a purposeful one, committed with malice, which results in death—clearly, one can conspire to such an intentional act.

Our review of Pennsylvania case law regarding conspiracy to commit third degree murder reveals convictions for this crime have long been recognized as valid. In *Commonwealth v. Eiland,* 450 Pa. 566, 301 A.2d 651 (1973), this Court addressed whether the evidence was sufficient to convict the defendant of conspiracy to commit a homicide classified, at that time, as second degree murder. The defendant, a gang member, was aware one of his fellow members threatened to shoot a rival gang member; the defendant's fellow gangster showed him a gun as they were walking to find the rival gang. En route, the defendant was separated from his group for a brief time. When he rejoined them, he was told a member of the rival gang had been shot. In rejecting the defendant's claim there was no evidence showing any actual agreement to commit murder or that he acquiesced in such plan, we stated:

Where the existence of a conspiracy is established, the law imposes upon a conspirator full responsibility for the natural and probable consequences of acts committed by his fellow conspirator or conspirators if such acts are done in pursuance of the common design or purpose of the conspiracy. Such responsibility attaches even though such conspirator was not physically present when the acts were committed by his fellow conspirator or conspirators and *extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties* [.]

*Id.*, at 653 (emphasis added) (internal quotations and citation omitted) (quoting *Commonwealth v. Thomas*, 410 Pa. 160, 189 A.2d 255, 258 (1963)). Accordingly, we concluded the evidence was sufficient to support the defendant's conspiracy to commit second degree murder conviction. *Id.*

In *Commonwealth v. Mobley*, 467 Pa. 460, 359 A.2d 367 (1976), this Court affirmed the defendant's conspiracy to commit third degree murder conviction where he engaged in a gang fight culminating in the stabbing death of the victim by another gang member. We stated:

"Here [the defendant], armed with a knife, admitted voluntarily joining the other members of his gang in an attack upon their rivals, a venture which necessarily involved the risk of serious injury. This element of shared criminal intent provides the nexus which renders all members of a criminal conspiracy responsible for the acts of any of its members."

*Id.*, at 369 (citations omitted).

The Superior Court subsequently rendered several decisions which likewise upheld convictions for conspiracy to commit third degree murder. *See Johnson*, at 785 (affirming conviction for conspiracy to commit third degree murder, based on fact "[defendant] possessed and shared an intent to act intentionally and with malice, *i.e.*, hardness of heart, cruelty, wantonness, or with a conscious disregard of an unjustified and extremely high risk that his actions might cause death or

serious bodily harm. ... [The defendant's] conduct on the night in question demonstrated a tacit *agreement* to commit such intentional and malicious acts."); *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1345–46 (1994) (affirming conviction for conspiracy to commit third degree murder and rejecting defendant's argument jury should have been instructed there must be shared intent to kill before conspiratorial liability for murder will attach; trial court's instruction—that defendant was criminally responsible if he shared intent with his co-conspirators to commit aggravated assault on victims and one of victims was killed—was proper); *Commonwealth v. Bigelow,* 416 Pa.Super. 449, 611 A.2d 301, 304 (1992) (citation omitted) (defendant's undisputed participation in attack leading to victim's death supported third degree murder conviction; court noted, "Despite the fact that an individual co-conspirator did not contemplate a killing, where such is a natural and probable consequence of a co-conspirator's conduct, killing is not beyond the scope of the conspiracy."); *Commonwealth v. Wanamaker,* 298 Pa.Super. 283, 444 A.2d 1176, 1178 (1982) (affirming conspiracy to commit third degree murder conviction because "[the defendant's] conduct reveals a conscious disregard of a great risk that he might have inflicted death or serious bodily harm upon [the victim]. Accordingly, [the defendant's] conspiracy with his brother to engage in activity that manifests such malice constitutes a criminal conspiracy to commit murder.").

The Superior Court abruptly changed course in *Clinger.* There, the court observed "the essence of third degree murder is a homicide which occurs as the unintended consequence of a malicious act." *Id.,* at 796 (citations omitted). In vacating the defendant's conspiracy to commit third degree murder sentence, the court reasoned:

> Since a conviction for conspiracy requires an intention to promote or facilitate the commission of a crime, the crime that is the object of the conspiracy must *either* be intended to be accomplished, *or* have been accomplished. In the present case, since the crime of third degree murder was not accomplished, [the defendant] could only be guilty of

conspiracy to commit a crime if he intended that crime to be accomplished. Logic dictates, however, and this Court has recognized, that it is impossible for one to intend to commit an unintentional act.

*Id.* (citation omitted). Subsequently, however, the court retreated from this reasoning and again recognized the offense of conspiracy to commit third degree murder. *See Commonwealth v. Geiger*, 944 A.2d 85, 92 (Pa.Super.2008) (citations omitted) (finding "evidence was sufficient in quantity and quality to sustain [the defendant's] convictions for third degree murder and criminal conspiracy, which manifested itself in the hardness of heart, cruelty, and recklessness of consequences associated with the manner and method of [the victim's] death.").

In *Commonwealth v. Barnes*, 592 Pa. 301, 924 A.2d 1202 (2007) (*per curiam* ), the Commonwealth asked this Court to consider the viability of a conspiracy to commit third degree murder charge in light of *Clinger's* rationale; however, this issue was collateral to the main issue, which the Commonwealth failed to properly preserve. Accordingly, we declined to review either issue. *See id.*, at 1203 n. 1.

The next time this Court considered the issue of whether conspiracy to commit third degree murder is a cognizable offense was in *Weimer.* However, as previously noted, we did not reach the issue because the defendant was convicted of conspiracy to commit homicide generally; the sentencing transcript and order incorrectly referenced the defendant's conspiracy conviction as being for third degree murder. Although the defendant was convicted of third degree murder, we noted "the ultimate gradation of the crime accomplished does not in and of itself delimit the degree of crime originally planned—the crime ultimately accomplished does not retroactively limit the scope of the original conspiracy." *Weimer*, at 1105. Therefore, as the conspiracy conviction for homicide in general was proper, we did not address the issue pertaining to conspiracy to commit third degree murder. The dissent, believing the record supported the defendant's assertion that she was convicted of conspiracy to commit third degree mur-

der, would have reached the merits of that issue and concluded it was an illegal sentence for a non-cognizable offense. *See id.*, at 1107 (Todd, J., dissenting).

In *Commonwealth v. Roebuck*, 612 Pa. 642, 32 A.3d 613 (2011), this Court addressed a similar issue: whether it is possible to be convicted as an accomplice to third degree murder. The defendant's argument was based on the same syllogism as in the present case:

[A]ccomplice liability attaches only where the defendant intends to facilitate or promote an underlying offense; third[ ]degree murder is an unintentional killing committed with malice; therefore, to adjudge a criminal defendant guilty of third[ ]degree murder as an accomplice would be to accept that the accused intended to aid an unintentional act, which is a logical impossibility.

*Id.*, at 614 (emphasis omitted). We concluded because the culpability required for accomplice liability is not tied to the result, but instead focuses on the act or the conduct, it is possible to be an accomplice to third degree murder. *See id.*, at 619–20 (citations omitted) (noting commentary to Model Penal Code, upon which Pennsylvania's accomplice liability statute is based, explains requirement that accomplice promote or facilitate "the commission of the offense" focuses on conduct, not result, thus diffusing any impression accomplice must always intend results essential to completed crime).

Two Justices concurred in the result, recognizing the flaw in the defendant's syllogism, which posited third degree murder is an unintentional killing committed with malice:

Third degree murder is not by definition an unintentional killing; it is a malicious killing without proof that the specific result intended from the actions of the killer was the death of the victim. A conviction for third degree murder only means the Commonwealth did not prove the defendant acted with a specific intent to kill.

As [the defendant's] syllogism is based on a false premise, his argument fails. Indeed, an accomplice to third degree murder does not intend to aid an unintentional murder; he

intends to aid a malicious act which results in a killing. Suppose an accomplice hands a gun to the principal and says "shoot that victim—I don't care if he dies or not, but shoot him." The principal shoots the victim in the leg, but the victim dies—it is classic third degree murder, there being no proof of specific intent to kill, but a clearly malicious act regardless of the consequences. The same logic that enables a murder charge against the principal binds the accomplice as well—both committed an intentional malicious act that resulted in the death of another, and both are guilty of the murder charge that follows.

*Id.,* at 624–25 (Eakin, J., concurring) (internal citation omitted).

Based upon *Clinger* and the dissent in *Weimer,* the Superior Court in the instant case deemed conspiracy to commit third degree murder a logical impossibility. The court's reasoning and the crux of appellees' position is that third degree murder is an unintentional killing, and one cannot intentionally conspire to commit an unintentional act. This logic is based on the reasoning in *Weimer's* dissent, which noted Pennsylvania's conspiracy statute is derived from § 5.03 of the Model Penal Code. *See Weimer,* at 1112 (Todd, J., dissenting) (citing 18 Pa.C.S. § 903, Official Comment—1972). "Under the Model Penal Code, where the object crime of a conspiracy is defined in terms of a result of conduct, such as homicide, the actor's purpose must be to promote or facilitate that result." *Id.* (citing Model Penal Code § 5.03 cmt. 2(c)(i) at 407 (Official Draft and Revised Comments 1985)). Thus, appellees contend the language of Pennsylvania's conspiracy statute focuses on the actor's intent to promote or facilitate the commission of a "crime," not an "act"; unless the actor intended to commit the underlying crime, he cannot be guilty of conspiracy for such crime.

Our review of the foregoing precedent, combined with the relevant statutory provisions, leads us to conclude the absence of intent to kill does not preclude a defendant from being convicted of conspiracy to commit third degree murder. Absence of specific intent is not an element of third degree murder; the third degree murder statute does not list ele-

ments or specify a requisite *mens rea*, but rather categorizes this degree of homicide as "[a]ll other kinds of murder" not falling within the definition of first or second degree murder. 18 Pa.C.S. § 2502(c). The Crimes Code further provides where a statute, such as § 2502(c), does not prescribe the culpability sufficient to establish a material element of the offense, such element is established if the defendant acted "intentionally, knowingly or recklessly[.]" *Id.*, § 302(c). Thus, a defendant who acts intentionally in attacking his victim may still be convicted of third degree murder. *See Meadows*, at 317 (reaffirming *Young's* holding there is no inconsistency in convicting defendant of both first and third degree murder); *see also Young*, at 174–75.

As noted in *Roebuck's* concurrence, "[t]hird degree murder is not by definition an unintentional killing; it is a malicious killing without proof that the specific result intended from the actions of the killer was the death of the victim." *Roebuck*, at 624–25 (Eakin, J., concurring). Although *Roebuck* dealt with accomplice liability, as opposed to conspiracy, it is instructive.[5] If a defendant acts with his co-conspirators in brutally attacking the victim with the intention of killing him, he conspires to commit first degree murder; if the defendant performs the same action but does not care whether the victim dies or not, he conspires to commit third degree murder. In the latter example, the defendant did not, as appellees argue, intend to aid an unintentional murder; rather, he intended to aid a malicious act resulting in a killing. Malice is not the absence of *any* intent, just the specific intent to kill. Where, as here, the defendant intends the underlying act (the beating) which results in death, the evidence supports the charge of conspiracy to commit third degree murder.

The language of Pennsylvania's conspiracy statute, modeled after the MPC, states the defendant must have "the intent of promoting or facilitating" a crime and must "engage in con-

5. The majority in *Roebuck* acknowledged the culpability requirements for accomplice liability differ from those for conspiracy, *id.*, at 622–23, noting "accomplice liability does not require the defendant to have the conscious objective to cause a particular result when such an outcome is an element of the offense." *Id.*, at 623.

duct which constitutes such crime[.]" 18 Pa.C.S. § 903(a), (a)(1). Thus, one does not conspire to commit a denominated offense; one conspires to engage in certain conduct. The fact the actors do not mention which crime such conduct will constitute does not make conspiracy to commit the offense non-cognizable. The conspiracy is to commit the beating, which, being carried out with the mental state of malice, supports a charge of third degree murder. Accordingly, we hold conspiracy to commit third degree murder is a cognizable offense.

Precedent of this Court and the Superior Court, in affirming convictions for conspiracy to commit third degree murder, lends support for our holding. In *Eiland*, this Court reasoned a conspirator's "responsibility for the natural and probable consequences of acts committed by his fellow conspirator[s] ... extends even to a homicide which is a contingency of the natural and probable execution of the conspiracy, even though such homicide is not specifically contemplated by the parties." *Eiland*, at 653 (internal quotations and citation omitted); *see also Mobley*, at 369 (citations omitted) (element of shared criminal intent to attack victim, which involved risk of serious injury, provided nexus rendering all members of conspiracy responsible for acts of any of its members). Similarly, in *Wanamaker, Bigelow, La,* and *Johnson,* the Superior Court based its holding on the defendant's shared intent to engage in an intentional activity with malice, resulting in a killing that was a natural, probable consequence of the activity. As discussed above, the defendants in these cases conspired to commit certain acts, which were intentional, regardless of whether the consequences of such acts were intended.

Here, appellees agreed to engage in the intentional, malicious attack of the victim, without regard to the consequences of that act. As their actions resulted in the victim's death, their conspiracy to commit third degree murder convictions were appropriate, and we reverse and remand for reinstatement of their sentences.[6]

6. Because we hold conspiracy to commit third degree murder is a cognizable offense, we do not reach the Commonwealth's alternative

Order reversed; remanded for reinstatement of sentences. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.

Justice TODD files a dissenting opinion in which Justice SAYLOR joins.

Justice TODD, dissenting.

I respectfully dissent. As noted by the majority, the Superior Court, in vacating Appellees' convictions for conspiracy to commit third-degree murder, relied on its prior decision in *Commonwealth v. Clinger*, 833 A.2d 792 (Pa.Super.2003), as well as the dissent written by this author, and joined by Justice Saylor, in *Commonwealth v. Weimer*, 602 Pa. 33, 977 A.2d 1103 (2009).[1] For the following reasons, I remain of the view that conspiracy to commit third-degree murder is not a cognizable offense, and, indeed, consider that conclusion to be the logical implication of our decision in *Commonwealth v. Roebuck*, 612 Pa. 642, 32 A.3d 613 (2011). Therefore, I conclude the Superior Court did not err in vacating Appellees' convictions on that basis.

As noted by the majority, the Pennsylvania Crimes Code defines the various degrees of murder as follows:

argument pertaining to modification of the conspiracy to commit third degree murder sentences to conspiracy to commit aggravated assault sentences.

1. In *Weimer*, this Court granted review to consider whether conspiracy to commit third-degree murder was a cognizable offense. Ultimately, however, the *Weimer* majority did not reach this issue because it concluded the jury had convicted the defendant of conspiracy to commit homicide generally, and the sentencing transcript and order incorrectly referenced the defendant's conviction as a conviction for third-degree murder. In my Dissenting Opinion, I opined that the record supported the Appellant's claim that she was convicted of the specific offense of conspiracy to commit third-degree murder; accordingly, I proceeded to address the issue on which this Court granted review, and concluded the defendant's sentence was illegal because conspiracy to commit third-degree murder is not a cognizable offense.

(a) Murder of the first degree.—A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

(b) Murder of the second degree.—A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony.

(c) Murder of the third degree.—All other kinds of murder shall be murder of the third degree. Murder of the third degree is a felony of the first degree.

18 Pa.C.S.A. § 2502(a)-(c). An "intentional killing" is defined as, *inter alia,* "any . . . kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d).

Malice is an essential element of all degrees of murder. *Commonwealth v. Gribble,* 550 Pa. 62, 77, 703 A.2d 426, 433–34 (1997), *abrogated on other grounds, Commonwealth v. Burke,* 566 Pa. 402, 781 A.2d 1136 (2001). In the legal sense, malice "exists not only where there is a particular ill will, but also whenever there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind regardless of social duty." *Commonwealth v. Young,* 494 Pa. 224, 228, 431 A.2d 230, 232 (1981) (citations omitted).

First-degree murder requires, in addition to malice, the finding of a specific intent to kill, a requirement that distinguishes it from all other kinds of murder. *Commonwealth v. Anderson,* 538 Pa. 574, 582, 650 A.2d 20, 24 (1994) (a necessary element of first-degree murder is the specific intent to kill). Second-degree murder occurs when a defendant is engaged as a principal or an accomplice in the perpetration of a felony. 18 Pa.C.S.A. § 2502(b).

Finally, "[m]urder of the third degree is a killing done with legal malice but *without specific intent to kill.* Murder of the third degree can, however, in some cases involve the specific intent to harm a victim as long as said intent falls short of the specific intent to kill." *Commonwealth v. Pitts,* 486 Pa. 212, 219, 404 A.2d 1305, 1308 (1979) (emphasis added). Malice may

be found to exist in an unintentional homicide where a defendant "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Young*, 494 Pa. at 228, 431 A.2d at 232 (citing *Commonwealth v. Hare*, 486 Pa. 123, 129, 404 A.2d 388, 391 (1979)).

Conspiracy is defined under the Crimes Code as follows:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

In order to sustain a conviction for criminal conspiracy, the Commonwealth must prove that a defendant entered into an agreement to commit or aid in an unlawful act with another person or persons, with a shared criminal intent, and that an overt act was done in furtherance of the conspiracy. *Commonwealth v. Rios*, 546 Pa. 271, 283, 684 A.2d 1025, 1030 (1996). The language of the conspiracy statute requires that the defendant have the specific intent of promoting or facilitating the commission of the crime which is the object of the conspiracy, a requirement which, as this Court recognized in *Roebuck*, distinguishes the crime of conspiracy from that of accomplice liability. 612 Pa. at 656–57 & n. 21, 32 A.3d at 622–23 & n. 21 (observing that the culpability requirements for attempt and conspiracy are different from those for accomplice liability, and that conspiracy is a specific intent crime).

Based on the plain language of the relevant statutes, in order to convict Appellees of conspiracy to commit third-degree murder, the Commonwealth was required to prove that Appellees, with the intent of promoting or facilitating third-

degree murder, agreed with each other that one or more of them would engage in conduct which constitutes third-degree murder, or engage in an attempt or solicitation to commit third-degree murder. In other words, the Commonwealth was required to prove that Appellees intended to commit an unintentional killing, a logical impossibility.

In rejecting Appellees' contention that conspiracy to commit third-degree murder is not a cognizable offense because one cannot intend to commit an unintentional act, however, the majority first determines that the "[a]bsence of specific intent is not an element of third degree murder." Majority Opinion at 381, 80 A.3d at 1195. The majority reasons:

[Although] the intent to kill is a defined element of first degree murder—this does not mean an element of third degree murder is the polar opposite of intent to kill, such that the Commonwealth must prove a lack of intent to kill to convict of third degree murder. The Commonwealth has no such obligation; evidence of intent to kill is simply irrelevant to third degree murder. The elements of third degree murder absolutely include an intentional act, but not an act defined by the statute as intentional murder. The act sufficient for third degree murder is still a purposeful one, committed with malice, which results in death—clearly, one can conspire to such an intentional act.

Majority Opinion at 376, 80 A.3d at 1191 (emphasis omitted).

In support of its determination, the Majority cites this Court's decision in *Commonwealth v. Meadows,* 567 Pa. 344, 787 A.2d 312 (Pa.2001), wherein the appellant was convicted of, *inter alia,* first-, second-, and third-degree murder. In a Post Conviction Relief Act petition, he argued he was entitled to a new trial because the verdicts were mutually exclusive, in that first-degree murder requires a finding of specific intent, second-degree murder may or may not require such a finding, and third-degree murder specifically does not require a finding of intent. He further argued the trial court erred in molding the verdicts into a conviction for first-degree murder. In rejecting the appellant's argument, our Court noted we addressed the exact issue in *Commonwealth v. Young,* 561 Pa.

34, 748 A.2d 166 (1999), wherein we determined there is no inconsistency when a jury convicts a defendant of both first- and third-degree murder and stated:

[T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Meadows*, 567 Pa. at 353, 787 A.2d at 317 (quoting *Young*, 561 Pa. at 51, 748 A.2d at 174–75). Based on the language of *Meadows* and *Young*, the majority herein concludes "a defendant who acts intentionally in attacking his victim may still be convicted of third degree murder." Majority Opinion at 382, 80 A.3d at 1195.

Respectfully, I find the majority's reliance on *Meadows* and *Young* unpersuasive. Neither *Young*, nor *Meadows*, involved conspiracy convictions for any type of homicide. Rather, those cases addressed the propriety of a molded verdict where a jury convicted the defendants of both first- and third-degree murder.

Furthermore, with respect to the majority's statement that a defendant who intentionally attacks his victim may be convicted of third-degree murder, it is beyond cavil that a defendant who engages in an intentional and malicious act, which results in an unintentional death, may be convicted of third-degree murder. Moreover, a defendant who conspires to commit an intentional act—assault, for example—which results in an unintentional death, may be convicted of both conspiracy to commit the underlying act (assault) and third-degree murder. However, in holding that a defendant may be convicted of the specific offense of conspiracy to commit third-degree murder, the majority, in my view, ignores the crucial distinction between an intentional *act* and an intentional *result*.

Pennsylvania's conspiracy statute is derived from Section 5.03 of the Model Penal Code. 18 Pa.C.S.A. § 903, Official Comment–1972. Under the Model Penal Code, where the object crime of a conspiracy is defined in terms of a result of conduct, such as homicide, the actor's purpose must be to promote or facilitate that result. Model Penal Code § 5.03, cmt. 2(c)(i) at 407 (Official Draft and Revised Comments 1985). For example, a conspiracy to destroy an inhabited dwelling, without a specific intent or purpose to kill its occupants, would not constitute a conspiracy to commit homicide. *Id.* at 408.[2]

As the American Law Institute, in its Commentary to the Model Penal Code, explained:

[W]hen recklessness or negligence suffices for the actor's culpability with respect to a result element of a substantive crime, as for example when homicide through negligence is made criminal, there could not be a conspiracy to commit that crime. This should be distinguished, however, from a crime defined in terms of conduct that creates a risk of harm, such as reckless driving or driving above a certain speed limit. In this situation the conduct rather than any result it may produce is the element of the crime, and it would suffice for guilt of conspiracy that the actor's purpose was to promote or facilitate such conduct—for example, if he urged the driver of the car to go faster and faster.

Model Penal Code § 5.03 cmt. 2(c)(i) at 408 (Official Draft and Revised Comments 1985).

In his treatise on criminal law, Professor Wayne R. LaFave also opined that, because conspiracy is a specific intent crime, it is not possible to conspire to commit a crime that results from an unintended consequence:

**2.** The comments to the Model Penal Code are relevant to our interpretation of Section 903 as the comments existed prior to the enactment of Section 903 by the Pennsylvania Legislature in 1972. *See* 1 Pa.C.S.A. § 1939 ("The comments or report of the ... entity which drafted a statute may be consulted in the construction or application of the original provisions of the statute if such comments or report were published or otherwise generally available prior to the consideration of the statute by the General Assembly.")

> [T]he fact that conspiracy requires an intent to achieve a certain objective means that individuals who have together committed a certain crime have not necessarily participated in a conspiracy to commit that crime.... It follows, therefore, that there is no such thing as a conspiracy to commit a crime which is defined in terms of recklessly or negligently causing a result.

Wayne R. LaFave, Criminal Law, § 12.2(c), at 630 (4th ed. 2003).[3]

Notwithstanding the above, the majority cites to a number of cases in which the Superior Court upheld convictions for conspiracy to commit third-degree murder.[4] However, in at least several of the cases cited by the majority, it is unclear whether the conspiracy conviction was for conspiracy to commit third-degree murder, or whether it was based on some other offense, such as assault, which resulted in the unintentional death. *See, e.g., Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336 (1994) (appellant was also convicted of aggravated assault); *Commonwealth v. Bigelow,* 416 Pa.Su-

3. The high courts of a number of our sister states have adopted the reasoning of LaFave and the Model Penal Code and concluded that it is impossible to conspire to commit a crime that is defined by its unintended consequence. *See, e.g., Palmer v. People,* 964 P.2d 524, 529 (Colo.1998) (concluding conspiracy to commit reckless manslaughter was not a cognizable crime because conspiracy is a specific intent crime, requiring both the specific intent to agree to commit a particular crime; and the specific intent to cause the result of the crime to which the conspirators agreed); *State v. Donohue,* 150 N.H. 180, 834 A.2d 253, 257–58 (2003) (holding that "one cannot conspire to commit a crime where the culpability is based upon the result of reckless conduct"); *State v. Baca,* 124 N.M. 333, 950 P.2d 776, 788 (1997) (holding that the crime of conspiracy requires both an intent to agree and an intent to commit the offense which is the object of the conspiracy); *State v. Foster,* 202 Conn. 520, 522 A.2d 277, 281 (1987) ("persons cannot attempt or conspire to commit an offense that requires an unintended result.").

4. The majority also cites this Court's decision in *Commonwealth v. Mobley,* 467 Pa. 460, 359 A.2d 367 (1976). However, it is unclear whether the appellant's conviction for criminal conspiracy therein was based on the fact-finder's conclusion that there was a conspiracy to commit third-degree murder, or a conspiracy to commit the assault which ultimately led to the victim's death.

per. 449, 611 A.2d 301 (1992) (trial court found appellant engaged in a conspiracy to commit an aggravated assault).

Additionally, as recognized by the majority, the cases it cites all pre-date the Superior Court's decision in *Clinger*, wherein the Superior Court held, *inter alia*, that the trial court erred in refusing to allow the appellant to withdraw his guilty plea to conspiracy to commit third-degree murder because there was no factual basis for such a plea. President Judge Emeritus Stephen J. McEwen, Jr. aptly stated:

> In the present case, since the crime of third degree murder was not accomplished, appellant could only be guilty of conspiracy to commit a crime if he intended that crime to be accomplished. Logic dictates, however, and this Court has recognized, that it is impossible for one to intend to commit an unintentional act.

833 A.2d at 796 (citing *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458, 460 n. 5 (1992) ("[a]n attempt to commit murder can only constitute an attempt to commit murder of the first degree, because both second and third degree murder are unintended results of a specific intent to commit a felony or serious bodily harm, not to kill")); *see also Commonwealth v. Barnyak*, 432 Pa.Super. 483, 639 A.2d 40, 45 n. 5 (1994) (noting that there is no crime of attempted third-degree murder); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 456 A.2d 171, 177 (1983) (holding that an individual cannot attempt to commit murder of the second or third degree because the crime of attempt is a specific intent crime, and an attempt to commit second- or third-degree murder would require proof that the individual intended to perpetrate an unintentional killing, which is logically impossible).

The majority offers that the Superior Court, in *Commonwealth v. Geiger*, 944 A.2d 85, 92 (Pa.Super.2008), subsequently "retreated from [its reasoning in *Clinger*] and again recognized the offense of conspiracy to commit third degree murder." Majority Opinion at 379, 80 A.3d at 1193. In my view, the holding of *Geiger* is not as clear as the majority suggests. Candice Geiger lived in a Philadelphia apartment with her boyfriend, Jerry Chambers, and her four nieces,

ages 2 through 10, for approximately nine months. During that period, Geiger and Chambers regularly beat the girls. One evening, after one of the girls reportedly refused to stop watching Geiger and Chambers having sex, Geiger told Chambers to throw the child against the wall. Chambers did so, and the child struck her head on the radiator; she was pronounced dead upon arrival to the hospital. Geiger and Chambers were charged and convicted of third-degree murder, conspiracy, and endangering the welfare of children. On appeal, Geiger challenged, *inter alia*, the sufficiency of the evidence to support her conviction for third-degree murder and conspiracy; she did not, however, appeal her conviction for endangering the welfare of children.

In rejecting Geiger's claim, the Superior Court explained that, because conspirators are responsible for the actions of their cohorts, Geiger was "accountable for Chambers' throwing [the victim] across the bedroom (at [Geiger's] insistence), causing [the victim] to strike her head on a radiator (and her resultant death), and dissuading [the victim's sister] from rendering assistance." 944 A.2d at 92 (footnote omitted). The court further concluded:

> [W]e find that the evidence was sufficient in quantity and quality to sustain [Geiger's] convictions for third degree murder and criminal conspiracy, which manifested itself in the hardness of heart, cruelty, and recklessness of consequences associated with the manner and method of [the victim's] death.

*Id.*

Significantly, there is no indication in the Superior Court's opinion that Geiger's conspiracy conviction was for the offense of conspiracy to commit third-degree murder. Indeed, it is possible that the conspiracy conviction was based on Geiger's conviction for endangering the welfare of children, which, as noted above, Geiger did not appeal. Thus, while Geiger most certainly could have been convicted of third-degree murder based on her intentional act of assaulting and/or endangering the welfare of the children, I cannot agree with the majority's determination that the Superior Court's decision in *Geiger*

stands for the proposition that conspiracy to commit third-degree murder is a cognizable offense.

Finally, and most critically, the majority does not square its reasoning with our recent decision in *Roebuck, supra.* In *Roebuck,* we considered whether it is possible to be convicted as an accomplice to third-degree murder. Noting that Pennsylvania's accomplice liability statute, *see* 18 Pa.C.S.A. § 306, is materially identical to Section 2.06 of the Model Penal Code, we first observed that Section 2.06 provides, in part:

> (3) A person is an accomplice of another person in the commission of an offense if . . . with the purpose of promoting or facilitating the commission of the offense, he . . . aids or agrees or attempts to aid such other person in planning or committing it[.]

> (4) When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

Model Penal Code § 2.06(3)(a)(ii), (4) (enacted as 18 Pa.C.S.A. § 306(c) and (d)).

We then explained:

> Section [2.06(4)] thus prescribes that an accomplice may be held legally accountable where he is an "accomplice in the conduct"—or, in other words, aids another in planning or committing the conduct with the purpose of promoting or facilitating it—and acts with recklessness (i.e., the "kind of culpability . . . sufficient for the commission of" a reckless-result offense).

> To the extent any aspect of this accountability scheme is unclear, ample clarification is provided in the explanatory note and commentary. As a threshold matter, the commentary explains that the term "commission of the offense," as used in Section 2.06(3), focuses on the *conduct,* not the result. *See id.* § 2.06, cmt. 6(b), at 310 ("Subsection 3(a) requires that the actor have the purpose of promoting or facilitating the commission of the offense, i.e., that *he have*

*as his conscious objective the bringing about of conduct* that the Code has declared to be criminal[.]" (emphasis added)). This diffuses any impression that an accomplice must always intend results essential to the completed crime.... The commentary then points to the fourth subsection as supplying the essential culpability requirement, as follows:

> One who solicits an end, or aids or agrees to aid in its achievement, is an accomplice in whatever means may be employed, insofar as they constitute or commit an offense fairly envisaged in the purposes of the association. But *when a wholly different crime has been committed, thus involving conduct not within the conscious objectives of the accomplice, he is not liable for it unless the case falls within the specific terms of Subsection (4).*

Model Penal Code § 2.06, cmt. 6(b), at 311 (emphasis added). According to the commentary, the purport of the fourth subsection is to hold the accomplice accountable for contributing to the conduct to the degree his culpability equals what is required to support liability of a principal actor.

612 Pa. at 651–53, 32 A.3d at 619–20 (footnotes omitted).

Turning to the elements of accomplice liability under Section 306(d) of the Pennsylvania Crimes Code, we stated:

> We recognize that the Crimes Code does not contain the wealth of collateral explanatory material which accompanies the Model Penal Code, including the latter's extensive notes and commentaries. Nevertheless, we believe the text of the Pennsylvania Statute is clear enough. In terms identical to those of Section 206 of the MPC, Section 306(d) of the Crimes Code directs the focus, for result-based elements, to the level of culpability required of a principal. *See* 18 Pa.C.S. § 306(d). In the present factual scenario, the purport is to avoid elevating a recklessness-oriented culpability requirement to a purposeful one relative to an accomplice.

*Id.* at 655, 32 A.3d at 621 (citations omitted). We rejected the appellant's "attempt" to read Section 306(c) "in isolation," without reference to Section 306(d). *Id.* at 656, 32 A.3d at 622.

Thus, our decision in *Roebuck* turned, in large measure, on the fact that subsection (d) of the accomplice liability statute focuses the assessment of liability not on the result of the accomplice's conduct, but on the conduct itself. *Id.* at 658, 32 A.3d at 623 ("[A]ccomplice liability does not require the defendant to have the conscious objective to cause a particular result when such an outcome is an element of the offense."). In doing so, we unmistakably distinguished accomplice liability from attempt and conspiratorial liability.[5]

Notably, neither Pennsylvania's conspiracy statute at 18 Pa.C.S.A. § 903, nor Section 5.03 of the Model Penal Code, on which Section 903 is based, contains a provision similar to that

**5.** In *Roebuck*, we observed:

> The differences between attempt and conspiracy, on the one hand, and complicity on the other, are reflected, amply, in the decisions from other courts. . . . Most, if not all, have held that a defendant can be convicted as an accomplice to an offense encompassing recklessness as the mental state pertaining to the result. Again, accomplice liability does not require the defendant to have the conscious objective to cause a particular result when such an outcome is an element of the offense.

*Id.* at 657–58, 32 A.3d at 623 (footnote omitted). To elaborate on this point, we quoted at length from the Connecticut Supreme Court's decision in *State v. Foster:*

> [T]o be guilty of attempt, a defendant's conscious objective must be to cause the result which would constitute the substantive crime. A person cannot attempt to commit a crime which requires that an unintended result occur, such as involuntary manslaughter, because it is logically impossible for one to intend to bring about an unintended result. Similarly, to be guilty of conspiracy, the defendant, upon entering an agreement, must intend that his conduct achieve the requisite criminal result. When the substantive crime requires an unintended result, a person cannot conspire to commit that crime because it is logically impossible to agree to achieve a specific result unintentionally.
>
>> Contrary to the [appellant's] assertions, and unlike attempt or conspiratorial liability, accessorial liability does not require that a defendant act with the conscious objective to cause the result described by a statute.
>>
>> * * *
>>
>> [The accomplice statute] merely requires that a defendant have the mental state required for the commission of a crime while intentionally aiding another.

*Roebuck*, 612 Pa. at 658–59, 32 A.3d at 623–24 (quoting *State v. Foster,* 202 Conn. 520, 522 A.2d 277, 282–283 (1987) (citations and footnotes omitted; emphasis omitted)).

contained in Pennsylvania's accomplice liability statute at 18 Pa.C.S.A. § 306(d), or in Section 2.06(4) of the Model Penal Code relating to accomplice liability. This fact, combined with our decision in *Roebuck*, indicates that a conspirator, unlike an accomplice, may not be held legally accountable for a result-based offense based on his agreement to engage, aid, or assist in the commission of a separate "contributing" offense.

The majority does not attempt to account for the logical underpinnings of our decision in *Roebuck*, or the differences between Pennsylvania's conspiracy and accomplice liability statutes (and the Model Penal Code provisions from which they were derived) which we found to be significant in that decision. Instead, the majority relies on a concurrence from *Roebuck* which did not garner a majority of the Court.

In my view, the only logical extrapolation of our decision in *Roebuck* is that conspiracy to commit third-degree murder is not a cognizable offense, and I would take this opportunity to expressly hold so. Accordingly, I conclude the Superior Court did not err in vacating Appellees' judgments of sentence in this regard.[6]

Justice SAYLOR joins this dissenting opinion.

---

6. While I conclude that conspiracy to commit third-degree murder is not a cognizable offense, from my dissenting posture, I do not address the Commonwealth's alternative argument that the Superior Court should have modified Appellees' sentences.