J-S73020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TERRY L. COLEMAN | : | |
| | : | |
| Appellant | : | No. 1106 MDA 2019 |

Appeal from the Judgment of Sentence Entered December 8, 2016
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0005318-2015

BEFORE:  SHOGAN, J., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED FEBRUARY 11, 2020**

Terry L. Coleman appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, after a jury convicted him of conspiracy[1] and criminal use of a communication facility.[2]  After careful review, we affirm.

On August 11, 2015, Harrisburg City police officers conducted a bust/buy operation[3] wherein undercover Officer Nicholas Ishman, in conjunction with a confidential informant (CI), purchased heroin.  First, Officer Ishman ensured the CI began the operation without any money, drugs, or

---

[1] 18 Pa.C.S.A. § 903.

[2] 18 Pa.C.S.A. § 7512(a).

[3] "A bust/buy operation is one where police officers go undercover or employ confidential informants (CIs) to set up a drug transaction.  Immediately after the drug transaction, the person selling or buying the drugs is arrested." Pa.R.A.P. 1925(a) Opinion, 3/9/17, at 2 n.5.

paraphernalia of his own.  The CI subsequently made a phone call and ordered a bundle of heroin—around ten baggies—for $80.  Officer Ishman provided the CI with the necessary $80, which had been photographed to document each bill's serial number.  Officer Ishman and the CI then drove to the corner of Fifteenth and Herr Streets in Harrisburg to meet the seller.

While waiting, Officer Ishman saw a Saab drive by with three occupants—Kendle Zufall in the driver's seat, Cody Riegle in the front passenger seat, and Coleman in the rear seat.  Riegel exited the Saab, walked over, got in Officer Ishman's car, and produced a bundle of heroin.  After the CI handed over the agreed-upon $80 dollars, Riegel counted the money and returned to the Saab.  The Saab then drove away, only to be pulled over by the police.  Coleman attempted to flee on foot, but officers apprehended him. They recovered $750 in cash on Coleman's person, and a cell phone discarded along the path Coleman took while fleeing.  Officer Ishman called the number the CI used to set up the sale and the recovered cell phone rang. The police also searched the Saab, recovering heroin, paraphernalia, and the purchase money.

In addition to the above-mentioned crimes, the police charged Coleman with flight to avoid apprehension[4] and possession with intent to deliver (PWID).[5]  Before trial, the Commonwealth withdrew the charge of flight to

---

[4] 18 Pa.C.S.A. § 5126.

[5] 35 P.S. § 780-113(a)(30).

avoid apprehension. At trial, Zufall testified that in 2015, she had an arrangement whereby she would drive Coleman, who lacked a vehicle, in exchange for money and heroin. Following trial, the jury was unable to come to a verdict regarding PWID, but convicted Coleman of conspiracy and criminal use of a communication facility. On December 8, 2016, the court sentenced Coleman to concurrent terms of 40 to 120 months' incarceration for conspiracy and 36 to 72 months' incarceration for criminal use of a communication facility.

On January 5, 2017, Coleman timely filed a notice of appeal. Coleman's appellate counsel failed to timely comply with Pa.R.A.P. 1925(b) or timely file a brief with this Court. On July 30, 2018, Coleman filed a motion to restore his appellate rights. On August 13, 2018, the trial court granted Coleman leave to appeal *nunc pro tunc*, which this Court subsequently vacated, having determined Coleman's request for restoration of his "direct appeal rights should have been treated as a petition under the Post Conviction Relief Act [(PCRA)]." ***Commonwealth v. Coleman***, 1568 MDA 2018 (Pa. Super. February 4, 2019). Upon remand, the court appointed new counsel and restored Coleman's appellate rights after he petitioned for relief under the PCRA. Coleman timely filed the instant direct appeal. Both Coleman and the court complied with Rule 1925.

Coleman raises the following claims for our review:

[1)] Whether there was insufficient evidence produced at trial to establish each and every element of criminal conspiracy to possession with intent to deliver where the co-defendant

was not available for trial and did not testify as to any conspiratorial relationship with the appellant?

[2)] Whether there was insufficient evidence produced at trial to establish each and every element of criminal use of a communication facility where there was no testimony presented which established that the appellant was the person on the other end of the cell phone called by the [CI] to set up the drug transaction?

Brief of Appellant, at 3 (capitalization adjusted).

This Court evaluates the sufficiency of the evidence supporting Coleman's convictions under the following, well-established standard:

We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder.

*Commonwealth v. Strafford*, 194 A.3d 168, 174 (Pa. Super. 2018) (citations and quotations omitted). "Because evidentiary sufficiency is a matter of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Brooker*, 103 A.3d 325, 330 (Pa. Super. 2014).

The Crimes Code defines conspiracy, in relevant part, as follows:

(a) Definition of conspiracy.--A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

- 4 -

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a); *see Commonwealth v. Fisher*, 80 A.3d 1186, 1190 (Pa. 2013) ("[T]he Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy.").

> Further,

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent.

> An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation.

*Commonwealth v. McCoy*, 69 A.3d 658, 664 (Pa. Super. 2013) (citations and quotations omitted); *see Commonwealth v. McCall*, 911 A.2d 992, 997 (Pa. Super. 2006) (finding evidence sufficient to support conviction for conspiracy to deliver where "he clearly took an active role in the illicit enterprise.").

Coleman avers "nothing specific" connects him to Riegle, who physically conducted the sale, thus rendering his conviction impermissibly based on his "mere presence" at the scene of the crime. **See** Brief of Appellant, at 12–13. His argument is clearly belied by the record. Not only was Coleman present at the scene, Zufall, his co-conspirator, testified to the existence, aims, and extent of the conspiracy. **See** N.T. Trial, 12/6/16, at 75–77 (stating Coleman provided Zufall and Reigle with heroin; in exchange Zufall drove Coleman around while he distributed heroin); **see also id.** at 77–81 (stating on day of arrest, Coleman discussed heroin on cell phone in Zufall's car, ordered Zufall to stop at Herr Street, and promised Riegle heroin in exchange for making sale).

Zufall's testimony in and of itself furnished sufficient evidence to prove Coleman, Zufall, and Riegle intended to distribute heroin[6] and that they not only took an act in furtherance thereof, they consummated the act of delivering heroin to the CI, thereby establishing all three elements of criminal conspiracy. **See Fisher**, **supra** at 1190 (outlining elements of conspiracy). The circumstantial evidence—namely, Coleman's flight from the scene, the connection between the cell phone recovered along his path of flight and the

---

[6] We note, though the jury could not reach a verdict as to Coleman's PWID charge, the jury was free to find Coleman guilty of conspiracy to commit PWID. **See Commonwealth v. Thoeun Tha**, 64 A.3d 704, 711 (Pa. Super. 2013) (asserting inconsistent verdicts do not constitute basis for reversal; affirming conspiracy conviction where jury acquitted defendant of underlying offense).

underlying purchase, and the quantity of cash on his person—further cements Coleman's role in this conspiracy. **See** N.T. Trial, 12/6/16, at 40–41 (describing flight, cash, and fact that recovered cell phone rang when police dialed number used to set up drug deal). Consequently, Coleman's first claim fails. **See McCall**, **supra** at 997.

In his second claim, Coleman argues his conviction for criminal use of a communication facility rests upon insufficient evidence because the Commonwealth failed to establish his identity as the individual who answered the CI's call and agreed to deliver heroin. Brief of Appellant, at 14.

The Crimes Code defines criminal use of a communication facility as follows: "A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under [the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780-101 *et seq.*]" 18 Pa.C.S.A. § 7512(a). Thus, to sustain a conviction for criminal use of a communication facility, the Commonwealth must prove the following: "(1) [the appellant] knowingly and intentionally used a communication facility; (2) [the appellant] knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred." **Commonwealth v. Moss**, 853 A.2d 374, 382 (Pa. Super. 2004). Further, though "the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes . . . [d]irect evidence of identity is,

of course, not necessary and a defendant may be convicted solely on circumstantial evidence." **See Commonwealth v. Smyser**, 195 A.3d 912, 915 (Pa. Super. 2018).

Coleman exclusively argues the Commonwealth failed to provide evidence, beyond mere conjecture, establishing his identity as the individual who answered the CI's phone call and arranged for the sale of heroin. **See** Brief of Appellant, 14–18. We limit our review accordingly. **See Commonwealth v. Johnson**, 33 A.3d 122, 126 (Pa. Super. 2011) ("[C]laims not raised in the trial court may not be raised for the first time on appeal.").

Coleman's argument is without merit. Again, Zufall's testimony in and of itself furnished sufficient evidence to identify Coleman as the perpetrator and convict him. **See** N.T. Trial, 12/6/16, at 77–81 (stating on day of arrest, Coleman discussed heroin on cell phone in Zufall's car, ordered Zufall to stop at Herr Street, and dispatched Reigle to complete sale of heroin); **see also Moss**, **supra** at 382 (establishing elements of offense). Further, the Commonwealth offered strong circumstantial evidence identifying Coleman as the perpetrator in the form of Officer Ishman's testimony recounting the recovery of a cell phone from the path Coleman took while fleeing and stating the recovered cell phone rang when the police dialed the number the CI used

to set up the drug deal.[7]  ***See id*** at 40; ***see Smyser***, ***supra*** at 915.  Taken in the light most favorable to the Commonwealth, the above-mentioned evidence furnished sufficient evidence to establish Coleman's identity beyond a reasonable doubt.  ***See Smyser***, ***supra*** at 915.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 02/11/2020

_____

[7] Coleman raises the dubious claim that it was "rank hearsay" for Officer Ishman to assert that the "cell phone rang when the police used the number the CI provided."  Brief of Appellant, at 15–16.  He, however, provides no citation in support of this proposition.  ***Id.*** at 16.  Further, he concedes "there was no objection [raised] by trial counsel."  ***Id.***