J-A08045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DWIGHT DARNELL BOWEN | : | |
| | : | |
| Appellant | : | No. 609 WDA 2021 |

Appeal from the Judgment of Sentence Entered December 17, 2020
In the Court of Common Pleas of Indiana County Criminal Division at
No(s): CP-32-CR-0001119-2019

BEFORE: BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: APRIL 29, 2022**

Dwight Darnell Bowen (Appellant) appeals, *pro se*,[1] from the judgment

of sentence imposed in the Indiana County Court of Common Pleas, following

his jury conviction of one count of third-degree murder[2] for the death of his

cellmate, Luis Santiago. On appeal, Appellant contends: (1) the trial court

had no subject matter jurisdiction to convict him of third-degree murder when

he was charged only with criminal homicide generally; (2) the evidence was

insufficient to prove the victim's death was a homicide; and (3) the verdict

was against the weight of the evidence. For the reasons below, we affirm.

_____

[1] As we will discuss *infra*, the trial court granted Appellant's request to proceed
*pro se* following his sentencing hearing.

[2] 18 Pa.C.S. § 2502(c).

The facts underlying Appellant's conviction are summarized by the trial court as follows:

> [Appellant's] conviction [arose] from events that occurred January 1, 2019, at State Correctional Institution (SCI) Pine Grove in Indiana County. At that time, [Appellant] was incarcerated and shared a cell with [Santiago]. When the corrections officer on duty did count at approximately 9:15 P.M., both [Appellant] and Santiago were present in the cell. Shortly after 10:00 P.M., a call came from the cell and the victim was found on the floor. When [Appellant] was asked what had happened to Santiago, he replied, "he fell out", and later stated that Santiago was standing at the sink and fell and hit his head on the door. At the time Santiago was discovered, [Appellant] was observed wiping his hands and had blood under his fingernails. There was also blood on multiple surfaces in the cell, a t-shirt folded in a long, narrow configuration, and the window of the cell had been taped over with paper. [Appellant] and Santiago had been observed arguing earlier about the phone and commissary and reportedly had a dispute over Santiago having the bottom bunk.

Trial Ct. Op. 4/20/21, at 1-2.

Appellant was charged with criminal homicide, 18 Pa.C.S. § 2501. He was represented by various attorneys employed by the Indiana County Public Defender's Office. The case proceeded to a jury trial which commenced on September 14, 2020. On September 18th, the jury returned a verdict of guilty on the charge of third-degree murder.[3] On December 17, 2020, the trial court

---

[3] The verdict sheet permitted the jury to convict Appellant of first-degree murder, third-degree murder, voluntary manslaughter, or involuntary manslaughter. *See* Verdict Sheet, 9/18/20. The jury found Appellant not guilty of first-degree murder, and guilty of third-degree murder. It did not return a verdict on the manslaughter charges.

sentenced Appellant to a term of 20 to 40 years' incarceration to be served consecutively to two life sentences he was serving for an unrelated conviction.

Trial counsel filed a timely post-sentence motion, challenging the weight and sufficiency of the evidence. The next day, December 24, 2020, Appellant filed a *pro se* post-sentence motion, in which he asserted he was not properly charged with third-degree murder.[4] On February 5, 2021, Appellant filed a motion seeking to represent himself *pro se* and requesting a **Grazier**[5] hearing. The trial court held a combined **Grazier**/post-sentence motion hearing on March 25, 2021.

After conducting a thorough colloquy, the court granted Appellant's motion for self-representation and appointed trial counsel as stand-by counsel. **See** N.T. Post-Sentence Motion H'rg, 3/25/21, at 3-17. The court also agreed to consider the arguments raised in both the counseled and *pro se* post-sentence motions. **See id.** at 15; Order, 3/30/21.

On April 20, 2021, the trial court entered an order and opinion denying relief under both motions. This timely *pro se* appeal follows.[6]

_____

[4] Throughout the trial proceedings, Appellant repeatedly and consistently filed *pro se* applications for relief while he was represented by counsel.

[5] **See Commonwealth v. Grazier**, 713 A.2d 81, 82 (Pa. 1998) (requiring "an on-the-record determination . . . that [a defendant's] waiver [of the right to counsel] is a knowing, intelligent, and voluntary one").

[6] On May 19, 2021, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal within 21 days. Standby counsel filed a Rule 1925(b) statement on the 21st day, June 9, 2021.

Appellant raises four claims on appeal:

1. Was the legislative intent in the language of the criminal homicide statute meant to be used as a catch all for all degrees of murder and manslaughter?

2. [Are] third[-]degree murder, manslaughter, and voluntary manslaughter lesser included offenses of first[-]degree murder?

3. Was the verdict sufficient to support a conviction of murder in the third degree?

4. Was the verdict against the weight of the evidence?

Appellant's Brief at ii.[7]

Appellant addresses his first two issues together as a challenge to the trial court's subject matter jurisdiction. *See* Appellant's Brief at 1. He argues that he was charged, generally, with criminal homicide pursuant to 18 Pa.C.S. § 2501,[8] which, he avers "isn't legally a punishable offense, because it

_____

Appellant also filed a *pro se* Rule 1925(b) statement, which was docketed on June 11th. However, the envelope in which Appellant mailed his statement is postmarked June 7, 2021. "Under the prisoner mailbox rule, we deem a *pro se* document filed on the date it is placed in the hands of prison authorities for mailing." *Commonwealth v. Crawford*, 17 A.3d 1279, 1281 (Pa. Super. 2011). Thus, both Appellant's counseled and *pro se* statements were timely filed.

The trial court issued a Pa.R.A.P. 1925(a) opinion on July 12 2021, adopting its April 10, 2021, opinion and order as dispositive of Appellant's claims. *See* Trial Ct. Op., 7/12/21. We note the Commonwealth did not submit an appellee's brief to this Court.

[7] We have reordered Appellant's claims for purposes of disposition.

[8] Section 2501 provides:

- 4 -

provides no provision for which one can actually be prescribed a specific punishment." **Id.** Appellant insists he was not "informed that he'd be charged with murder 1 and 3 and manslaughter until the first date of trial." **Id.** at 2. He maintains this lack of notice constituted a due process violation and placed "an undue burden [on him to] prepare a defense for each of the qualitative differences among the various degrees of murder and manslaughter." **Id.** at 1.

Our Supreme Court has stated:

[There are] two requirements for subject matter jurisdiction as it relates to criminal defendants: the competency of the court to hear the case, and the provision of formal notice to the defendant of the crimes charged in compliance with the Sixth Amendment of the United States Constitution and Article I, Section 9, of the Pennsylvania Constitution.

**Commonwealth v. Jones**, 929 A.2d 205, 210 (Pa. 2007). Here, Appellant appears to challenge the second requirement, as he argues it was unfair to charge him with criminal homicide generally, and require him to defend against first-degree murder, third-degree murder, and both voluntary and involuntary manslaughter.

---

**(a) Offense defined. —** A person is guilty of criminal homicide if he intentionally, knowingly, recklessly or negligently causes the death of another human being.

**(b) Classification. —** Criminal homicide shall be classified as murder, voluntary manslaughter, or involuntary manslaughter.

18 Pa.C.S. § 2501(a)-(b).

- 5 -

However, as the trial court cogently explains in its opinion, Appellant's argument was rejected by this Court in **Commonwealth v. Chambers**, 852 A.2d 1197 (Pa. Super. 2004):

> In **Chambers**, the defendant argued that the information only charged him with criminal homicide but did not specifically charge him with second[-]degree murder or allege every element of that offense. [**Chambers**, 852 A.2d] at 1198. "The purpose of an information or an indictment is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act." [**Id.**] at 1199 [(citation omitted).] "An information which alleges that the accused [']unlawfully, intentionally, knowingly, recklessly or negligently['] caused another's death, and which also charged robbery, is adequate notification that he is charged with second[-]degree murder." [**Id.**] "An information need not specify a degree of murder or the degrees of manslaughter in order to sustain the verdict of second[-]degree murder." **Id.**
>
> The Information filed on December 12, 2019, charged [Appellant] with Criminal Homicide as follows:
>
>> On or about 01/01/2019. Intentionally, knowingly, recklessly, or negligently caused the death of another human being, to wit, [Appellant] did intentionally cause the death of Luis Santiago.
>
> The Court finds [Appellant's] argument unmeritorious. The Information was not required to specify the offense of third[-]degree murder and provided [Appellant] with sufficient notice to prepare a defense.

Trial Ct. Op., 4/20/21, at 3.

We agree that **Chambers** is controlling. Appellant was convicted of third-degree murder, which is defined in the Crimes Code as "[a]ll other kinds of murder[,]" not including first-degree or second-degree murder. 18 Pa.C.S. § 2502(c). The Pennsylvania Supreme Court has explained: "[T]hird degree murder is not a homicide that the Commonwealth must prove was committed

- 6 -

with malice and **without** a specific intent to kill[; i]nstead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill." ***Commonwealth v. Fisher***, 80 A.3d 1186, 1191 (Pa. 2013) (citation omitted). Here, Appellant's criminal information put him on notice that the Commonwealth believed he caused the death of the victim. This was sufficient to satisfy due process concerns. Thus, Appellant's first two claims lack merit.[9]

Next, Appellant challenges the sufficiency of the evidence supporting his conviction. Our review of a sufficiency claim is guided by the following:

> As a general matter, our standard of review . . . requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial

---

[9] We note that Appellant also asserts the Commonwealth failed to present a *prima facie* case for third-degree murder at the preliminary hearing. Appellant's Brief at 2. It is well-settled, however, that Appellant's subsequent conviction of third-degree murder "renders moot any allegation that the Commonwealth failed to establish a *prima facie* case" at the earlier proceeding. ***Commonwealth v. Lee***, 662 A.2d 645, 650 (Pa. 1995).

does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the . . . convictions will be upheld.

***Commonwealth v. Windslowe***, 158 A.3d 698, 708–09 (Pa. Super. 2017) (citation omitted).

Appellant argues the evidence was insufficient to support his conviction of third-degree murder because it did not establish how the victim died. Appellant's Brief at 2. He contends the Commonwealth theorized that the cause of death was manual strangulation based solely on the fact that the victim had hemorrhaging in his eyes, otherwise known as petechia. ***Id.*** However, Appellant emphasizes that the expert forensic pathologist who performed the autopsy — Dr. Kevin Whaley — acknowledged hemorrhaging can occur absent asphyxiation. ***See id.*** Further, Dr. Whaley testified that although he believed the cause of death was asphyxia, he "didn't know the particular mechanism for the asphyxia due to the lack of marks and bruising around [the victim's] neck area." ***Id.*** at 3. Appellant maintains that, conversely, his expert forensic pathologist — Dr. Karl Williams — opined that the autopsy report revealed manual strangulation did **not** occur due to the absence of any markings on the "skin surface" or "internal structures" of the victim's neck. ***Id.*** Additionally, Appellant insists the crime scene was

compromised by first responders "making it impossible for the CSI team to properly read the crime scene." ***Id.*** at 4.

As noted above, "[t]he elements of third-degree murder, as developed by case law, are a killing done with legal malice." ***Commonwealth v. Marquez***, 980 A.2d 145, 148 (Pa. Super. 2009) (*en banc*) (citation omitted).

> Malice is defined as: wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury. Malice may be inferred by considering the totality of the circumstances.

***Windslowe***, 158 A.3d at 709 (citation omitted). "[T]o convict a defendant for third[-]degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto." ***Fisher***, 80 A.3d at 1191 (citation omitted).

In the present case, the trial court concluded Appellant's challenge to the sufficiency of the evidence was meritless. The court opined:

> Experts submitted reports and testified for both the Commonwealth and the defense at trial. The Commonwealth's expert, Dr. Kevin Whaley, M.D., opined that the cause of death was venous obstruction, and noted the presence of petechial hemorrhage, brain swelling, and pulmonary edema as indicative of such an obstruction. Dr. Whaley also noted blunt force injuries to the head and hands that were indicative of a physical altercation.
>
> The defense expert, Karl E. Williams, M.D., opined that while the physical findings of the autopsy were consistent with an asphyxial death, he did not believe that manual strangulation had occurred. In his report, Dr. Williams noted the absence of external markings or internal injuries that would accompany strangulation.

With respect to the injuries Santiago did sustain, Dr. Williams stated that none were significant enough to have contributed to his death.

"It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence." A mere conflict in the testimony of the witnesses does not render the evidence insufficient because "it is within the province of the factfinder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence."

At trial, the jurors were also presented with evidence that [Appellant] was alone in the cell with Santiago and there were obvious signs of a struggle in the cell including blood, urine on the floor around and under the body, and general disarray of the area. A rolled up t-shirt with wrinkles was also recovered from the cell that could have been used as a ligature. Santiago sustained injuries to his hand, lip, and eye and also had abrasions on the backs of his hands.

"Circumstantial evidence is sufficient to sustain a conviction so long as the combination of evidence links the accused to the crime beyond a reasonable doubt". "Circumstantial evidence may be sufficient to prove any element, or all of the elements of the crime."

Here, the jurors were free to believe all, part, or none of the evidence presented and determine which expert they believed to be most credible. The jurors could also consider circumstantial evidence including the physical state of the cell and that [Appellant] and Santiago were the only two people in the cell at the time Santiago's injuries were sustained. The jury could properly conclude that [Appellant] killed Santiago, even if not intentionally, by acting with a conscious disregard to an unjustified and extremely high risk that his actions might cause death or serious bodily harm.

Trial Ct. Op. 4/20/21, at 5-6 (citations omitted).

We agree with the trial court's determination. Appellant bases his argument on the conflicting testimony of the forensic pathologists — Dr. Whaley for the Commonwealth and Dr. Williams for the defense. The problem

is, however, the testimony was just that — conflicting. Thus, it was left to the jury to resolve the conflict and credit one of the experts. *See Windslowe*, 158 A.3d at 709. Here, the jury credited Dr. Whaley's conclusion that the victim died from asphyxiation due to venous obstruction. *See* N.T. Jury Trial, 9/15/20, at 333. The Commonwealth was not required to prove the mechanism that caused the obstruction. However, Dr. Whaley testified that the use of some mechanisms, including the rolled-up t-shirt recovered from the cell, may not leave a mark on the victim's skin. *Id.* at 324-26. Moreover, the Commonwealth presented evidence that Appellant and the victim were the only two people in the cell at the time of the incident, the victim had other injuries indicative of an altercation, and **both** forensic pathologists agreed victim's death did not result from a fall, which was what Appellant initially told the responding correction officers had happened.[10] *See id.* at 329-30, 424. Thus, the circumstantial evidence was sufficient to prove that Appellant killed the victim, either intentionally or unintentionally, with malice.

_____

[10] We note that, at various times, Appellant also told investigating officers that the victim turned "like he was going to use the bathroom and passed out" and that he had an epileptic seizure. N.T. Jury Trial at 100, 366. However, the victim's medical records did not reveal any "significant disease process or medical history[,]" including epilepsy, that would explain a spontaneous loss of consciousness. *Id.* at 332-33. Furthermore, Appellant's expert, Dr. Williams, agreed he did not know "of any pre-existing conditions that would render [the victim] unconscious." *Id.* at 416. He also acknowledged that he did not review the victim's medical records before rendering his opinion. *See id.* at 416, 418-19.

In his final claim, Appellant maintains the verdict was against the weight of the evidence.[11]  First, he contends the coroner's office "leaked confidential information contained in the autopsy report" — namely, that the victim "died at the hands of another inmate" — before it was made public.  Appellant's Brief at 4.  Appellant insists the "leakage . . . inflamed this false narrative the [Commonwealth] locked on[to] though there was no scientific evidence to support" it.  *Id.*  Furthermore, he maintains the Commonwealth illegally accessed his "emails, electronic communications and other documents" without a court order.  *Id.*  Appellant claims he emailed his family in December of 2018 "concerning being approved bottom bunk status" which would have "poked holes in [the Commonwealth's] motive." *Id.* at 5.  However, he argues that he has been denied access to these documents, which puts him "at a disadvantage when contesting the weight of the evidence used to convict him." *Id.*

> Our review of a weight claim is well-established:
>
> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.  Resolving contradictory testimony and questions of credibility are matters for the finder of fact.  It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, [a]ppellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence.  Because

---

[11] Appellant properly preserved his weight claim in the timely filed, counseled post-sentence motion.  *See* Pa.R.Crim.P. 607(A)(3).

the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

*Commonwealth v. Miller*, 172 A.3d 632, 642–43 (Pa. Super. 2017) (citations and quotation marks omitted).

Preliminarily, we emphasize that none of the arguments Appellant presents in his *pro se* brief relate to the weight of the evidence supporting his conviction of third-degree murder. Rather, he complains of information purportedly leaked to the press, the alleged illegal seizure of his prison communications, and the alleged denial of his discovery requests. More importantly, he did not make any of these arguments in either his counseled or *pro se* post-sentence motion, during the post-sentence hearing, or in either his counseled or *pro se* Rule 1925(b) statement. Thus, they are waived for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."), 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").

Briefly, we note that counsel asserted Appellant's conviction was against the weight of the evidence because there were no witnesses to either the

- 13 -

incident leading the victim's death, or actions taken by Appellant that may have caused the victim's death. **See** Appellant's Post-Sentencing Motion Pursuant to Pa.R.Crim.P. 720, 12/23/20, at 1 (unpaginated); Appellant's Concise Statement of Matters Complained of on Appellant Pursuant to Rule 1925(b), 6/9/21, at 2 (unpaginated). The trial court summarily disposed of this argument as follows:

> At the outset, "there is no requirement that a homicide, including murder in the first degree, be proven by eyewitness testimony." **Commonwealth v. Crowson**, 412 A.2d 1363, 1365 (Pa. 1980). As discussed above, the jurors were free to choose which evidence to believe, including circumstantial evidence. The absence of a witness to Santiago's death or any prior actions taken by [Appellant] is not of such great weight as to deny justice or warrant reversal of the jury's verdict.

Trial Ct. Op., 4/20/21, at 7.

Appellant fails to establish that the trial court's finding was an abuse of discretion. **See Miller**, 172 A.3d at 642-43. Rather, as noted above, he focuses on other claims which do not relate to the evidence presented to the jury and were not preserved in the trial court. Thus, no relief is warranted.

Judgment of sentence affirmed. Appellant's Motion to Direct the District Attorney to Furnish Appellant with a Copy of Appellee Brief is hereby DENIED as moot, since the Commonwealth did not file a brief in this matter.

J-A08045-22

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/29/2022