J-S17041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BERNARD SALMOND | : | |
| | : | |
| Appellant | : | No. 2201 EDA 2023 |

Appeal from the Order Entered August 11, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009618-2012

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED JULY 5, 2024**

Appellant, Bernard Salmond, appeals *pro se* from the post-conviction court's August 11, 2023 order dismissing his second, untimely petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The PCRA court summarized the facts of Appellant's case, as follows:

On April 10, 2008, Kenneth Wiggins and Appellant's brother, Quentin Salmond,[1] ("Quentin"), were betting on a game of dice. During the betting, there was an altercation over a bet which prompted Wiggins to take money from Quentin.

[1] As Quentin Salmond and [Appellant] share the same last name, Quentin Salmond will be referred to by his first name in order to prevent confusion. Quentin was also known as "Q[.]"

Two days later, on April 12, 2008, at approximately 12:30 p.m., Wiggins went into the Skyline Restaurant, which he was known to frequent. As Wiggins entered the restaurant, a car driven by [Appellant], with Quentin and Jamil Banks as passengers, pulled up and parked on Woodlawn Road, near the intersection with

Chew Road. [Appellant] was driving a blue Lincoln Continental, with PA license plate GXW5380. Quentin, dressed in an Islamic khimar[1] and sunglasses to hide his identity, and Banks exited the vehicle and walked up the street towards the Skyline Restaurant. [Appellant] remained in the car, parked, with the engine running. Joan Hill witnessed [Appellant] park the car and also noticed Quentin, who appeared to Hill to be a male wearing female headwear. Believing that a robbery was about to happen, Hill called 911.

Quentin remained outside the restaurant while Banks went inside and purchased a soda, presumably scouting for Wiggins. Banks then exited the restaurant and returned to where Quentin was standing outside. Shortly thereafter, Wiggins left the restaurant and began walking up the street when he was confronted by Quentin and Banks. During this confrontation, Quentin shot Wiggins once in the chest. After being shot, Wiggins attempted to flee the scene but collapsed on the far side of the street. Quentin and Banks ran back to the car in which [Appellant] was waiting, and the three fled the scene. Medical personnel arrived on scene and transported Wiggins to the hospital, where he was later pronounced dead.

Police recovered two fired cartridge casings and a Mountain Dew soda bottle from the scene of the shooting. Police also recovered the surveillance cameras from the Skyline Restaurant, which had recorded the entire encounter. A .32 caliber bullet was recovered from Wiggins' body. As the casings found at the scene were not .32 caliber, police determined that two guns had been fired outside of the restaurant, one .22 caliber semi-automatic and one .32 caliber revolver.

[Appellant] had obtained the car that he used in the murder from Charles Hayward, who sold the vehicle to Appellant but never transferred the title. Because Appellant feared that police would trace the car to him through Hayward, [Appellant] instructed two associates, Shawn Pina and Tyree Fisher, to burn the vehicle. The vehicle was found on April 14, 2008, two days after the shooting,

---

[1] "A khimar is a two-piece garment consisting of a long cape covering the entire body and a head covering that also can be pulled up to hide the mouth." *Commonwealth v. Salmond*, No. 1975 EDA 2019, unpublished memorandum at 2 (Pa. Super. filed June 21, 2019).

- 2 -

when fire department personnel responded to a report of a vehicle fire near Chew Street and 10th Street in Philadelphia.

PCRA Court Opinion (PCO), 11/14/23, at 4-5 (footnotes and citations to the record omitted).

Pertinent to the claims raised by Appellant herein, we also note that, in disposing of a recent appeal filed by Quentin, this Court mentioned that,

> [o]n January 13, 2010, Robert Bluefort told police about three weeks after the murder, [Quentin] confessed to him that he shot Wiggins. According to [Quentin], he had to shoot or be shot.
>
> [Appellant] told Bluefort that the police had questioned Hayward because the car that was used in the murder was in his name. Bluefort and [Appellant] then discussed burning the vehicle. [Appellant] stayed with Bluefort for about a month after the murder.

***Commonwealth v. Quentin Salmond***, No. 3037 EDA 2022, unpublished memorandum at 2 (Pa. Super. filed Aug. 24, 2023), *appeal denied*, 2024 WL 684992 (Pa. Feb. 20, 2024).

The PCRA court also provided the following procedural history of Appellant's case:

> On March 21, 2014, following a jury trial before this [c]ourt, [Appellant] … was convicted of one count each of murder of the third degree (18 Pa.C.S. § 2502(c)) and conspiracy to commit murder (18 Pa.C.S. §§ 903, 2502). On June 20, 2014, the [c]ourt imposed an aggregate sentence of 18 to 36 years['] incarceration in state prison. [Appellant] timely appealed, and the Superior Court affirmed [Appellant's] judgment of sentence on November 16, 2015. The Supreme Court denied *allocatur* on March 16, 2016. [***See Commonwealth v. Salmond***, 134 A.3d 493 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, No. 661 EAL 2015 (Pa. 2016).]
>
> On September 8, 2016, [Appellant] filed a *pro se* petition under the PCRA ("First Petition"). David Rudenstein, Esquire[,] was appointed to represent [Appellant] on July 12, 2017. Mr.

Rudenstein filed an amended PCRA petition on January 18, 2018. On November 20, 2018, the [c]ourt issued notice, pursuant to Pa.R.Crim.P. 907, of its intent to dismiss [Appellant's] petition without a hearing ("907 Notice") because [Appellant's] petition failed to include certifications for his proffered witnesses in accordance with 42 Pa.C.S. § 9545(d)(1). On June 21, 2019, the [c]ourt formally dismissed [Appellant's] First Petition.

On July 8, 2019, Mr. Rudenstein filed a motion to withdraw as counsel, in which he detailed his efforts to contact witnesses proffered in [Appellant's] First Petition and stated that there was no merit to [Appellant's] claims for collateral relief. The next day, on July 9, 2019, [Appellant] filed a *pro se* notice of appeal to the Superior Court (docket number 2051 EDA 2019). On July 12, 2019, the [c]ourt denied Mr. Rudenstein's motion to withdraw as counsel, and Mr. Rudenstein filed a counseled notice of appeal to the Superior Court on behalf of [Appellant] (docket number 1975 EDA 2019). That same day, the [c]ourt ordered [Appellant] to file a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P 1925(b) ("Statement of Errors") by August 2, 2019. On August 23, 2019, Mr. Rudenstein filed a Statement of Errors in which he stated his intent to file a brief with the Superior Court stating that there was no merit to [Appellant's] claims for collateral relief pursuant to **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988)[,] and **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988).

On September 16, 2019, Mr. Rudenstein discontinued [Appellant's] duplicative *pro se* appeal at docket number 2051 EDA 2019. On October 15, 2019, [Appellant] filed another *pro se* notice of appeal (docket number 3069 EDA 2019), along with a *pro se* Statement of Errors. The Superior Court dismissed the second *pro se* appeal as duplicative on January 10, 2020.

Unfortunately, Mr. Rudenstein passed away on April 15, 2020. This [c]ourt then appointed Gary S. Server, Esquire to represent [Appellant]. The Superior Court struck Mr. Rudenstein's filings and established a new briefing schedule. Mr. Server then filed his own petition to withdraw and no-merit brief with the Superior Court. On November 16, 2020, the Superior Court affirmed this [c]ourt's June 21, 2019 order dismissing the First Petition and granted Mr. Server's motion to withdraw as counsel. [**See Commonwealth v. Salmond**, 242 A.3d 416 (Pa. Super. 2020) (unpublished memorandum).]

- 4 -

On September 13, 2022, [Appellant] *pro se* filed a second PCRA petition ("Second Petition"), which is here at issue. The Commonwealth filed an answer to [Appellant's] Second Petition on January 20, 2023, to which [Appellant] responded on March 24, 2023. On April 6, 2023, the [c]ourt issued a notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss [Appellant's] Second Petition without a hearing. [Appellant] then filed a detailed response to the [c]ourt's 907 Notice ("907 Response") raising additional claims on April 19, 2023. On July 7, 2023, the Commonwealth filed a letter addressing [Appellant]'s response. On August 11, 2023, the [c]ourt dismissed [Appellant]'s Second Petition.

PCO at 1-3.

Appellant filed a timely, *pro se* notice of appeal, and he complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court filed a Rule 1925(a) opinion on November 14, 2023. Herein, Appellant states the following 11 claims for our review:

1. Did the PCRA [c]ourt err when it denied … [Appellant's] subsequent petition without stating the reasons for denial?

2. Did the [c]ourt err when it failed to recognize … [Appellant's] governmental interference claim?

3. Did the PCRA [c]ourt err when it failed to grant [Appellant] an evidentiary hearing and/or provide [Appellant] with effective assistance of counsel on his ineffective counsel claim?

4. Did the [c]ourt err when it substituted counsel untimely and by failing to respond to … [Appellant's] motion for new counsel?

5. Did the [c]ourt err when it failed to acknowledge and/or grant [Appellant's] appeal, due to hybrid counsel, where … [Appellant's] counsel abandoned [Appellant] and violated the [a]ttorney-[c]lient privilege?

6. Did the [c]ourt err when it denied … [Appellant's] First PCRA [P]etition without affording … [Appellant] the opportunity to respond to the [c]ourt's 907 Notice?

7. Did the [c]ourt err in dismissing … [Appellant's] *pro se* appeals to the Superior Court?

8. Did the [c]ourt err in failing to grant [Appellant's] Second Petition when [Appellant] presented newly-discovered evidence?

9. Did the [c]ourt err when it denied … [Appellant's] **Brady**[2] claim and governmental interference claim?

10. Did the [c]ourt err when it illegally sentenced [Appellant] and when it failed to address his illegal sentence claim in his PCRA petition?

11. Did the [PCRA c]ourt err when it failed to address [Appellant's] jury misconduct claim in his PCRA petition?

Appellant's Brief at 6.

In assessing Appellant's issues, we have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have examined the well-reasoned opinion of the Honorable Glenn B. Bronson of the Court of Common Pleas of Philadelphia County. We conclude that Judge Bronson's comprehensive opinion accurately disposes of the issues presented by Appellant. However, we also agree with the Commonwealth that it is helpful to add the following three, supplemental arguments to Judge Bronson's analysis:

First, as a part of his government interference claim, [Appellant] suggests that the prison failed to deliver him mail from this Court concerning the disposition of his first PCRA appeal. Brief for [Appellant] at 15-16. However, the Department of Corrections documents he attaches to his brief show that the prison received mail from the Superior Court on December 12, 2020, three weeks after this Court affirmed the denial of his first PCRA petition. **Id.**, at Exhibit B. That document says that the mail was "Delivered by Security" but was "Declined/Unable to Sign." **Id.** This does not

---

[2] **Brady v. Maryland**, 373 U.S. 83 (1963).

- 6 -

rise to government interference or a new fact to overcome the PCRA's timeliness requirements. Nor does [Appellant] explain why it took him two years from that alleged government interference to raise the issue in his second PCRA petition. Accordingly, this claim does not warrant relief.[3]

Next, [Appellant's] third through seventh issues all relate to alleged ineffectiveness of his first PCRA counsel. Brief for [Appellant] at 16-26. He raises all of these claims ostensibly through … *Bradley*, 261 A.3d [at] 401…, which held that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." However, as this Court recognized in *Commonwealth v. Stahl*, 292 A.3d 1130 (Pa. Super. 2023), *Bradley* created a prospective rule that does not overcome the PCRA's timeliness requirements. "Nothing in *Bradley* creates a right to file a second PCRA petition outside the PCRA's one-year time limit as a method of raising ineffectiveness of PCRA counsel or permits recognition of such a right." *Stahl*, 292 A.3d at 1136.

---

[3] We note that in his reply brief, Appellant essentially contends that the mail was not delivered by the prison due to the Covid-19 pandemic, and not through any fault of Appellant. *See* Appellant's Reply Brief at 5. However, even if Appellant is correct that his mail was not delivered due to an error by the prison, he has failed to demonstrate that he acted with due diligence in discovering and raising this claim. Notably, the dates of the allegedly undelivered mail are July 14, 2020, November 19, 2020, and December 22, 2020, yet Appellant did not raise this governmental interference claim until his Rule 907 response filed on April 19, 2023. He does not explain how, or exactly when, he discovered that this mail had not been delivered, or offer any discussion of why he could not have realized this fact earlier. Furthermore, Appellant does not specifically identify what he believes was in that undelivered mail, only cursorily claiming that his failure to receive it impeded his ability "to appeal his first PCRA to a higher court" in order to allege the ineffectiveness of his first PCRA counsel(s). However, Appellant would not have been permitted to raise, for the first time on appeal to our Supreme Court in 2020, the ineffectiveness of his first PCRA counsel. Indeed, prior to *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021), which was decided on October 20, 2021, any claim of PCRA counsel's ineffectiveness had to be raised in the PCRA court and could not be raised for the first time on appeal. *See id.* at 391-97 (summarizing the then-current law regarding how a petitioner must raise PCRA counsel's ineffectiveness).

*Stahl* is directly applicable here because [Appellant] is seeking to assert the ineffectiveness of his first PCRA counsel through an untimely second PCRA petition. Accordingly, the PCRA court properly dismissed as untimely all of [Appellant's] various claims of ineffective assistance of his first PCRA counsel.[4]

Finally, [Appellant] argues that the PCRA court erred in failing to address his illegal sentence claim. Brief for [Appellant] at 31-34. In his appellate brief, he suggests that his sentence somehow violates *Alleyne v. United States*, [570 U.S. 99] (2013), because he was charged with murder and conspiracy generally but was ultimately convicted of third-degree murder and conspiracy to commit third-degree murder. This claim is clearly meritless as *Alleyne* only requires that a jury find beyond a reasonable doubt any fact that would increase the imposed penalty. [Appellant] does not point to any such facts that are at issue here. The jury specifically found [Appellant] guilty of third-degree murder and therefore found each element of the crime beyond a reasonable doubt.[3] [Appellant] also claims that his sentence is illegal because conspiracy to commit third-degree murder is not a cognizable offense. The PCRA court correctly determined that [Appellant] failed to raise any exception to assert this untimely claim. [PCO] at 21. Moreover, this claim too is plainly meritless, as it is well settled that conspiracy to commit third-degree murder is a cognizable offense. *Commonwealth v. Fisher*, 80 A.3d 1186, 1187 (Pa. 2013).

---

[4] Appellant does not sufficiently explain how his ineffectiveness claims pertaining to his first PCRA counsel meet any timeliness exception. *See Commonwealth v. Wharton*, 886 A.2d 1120, 1127 (Pa. 2005) ("It is well settled that allegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA.") (citations omitted). Indeed, Appellant states that he notified the PCRA court and this Court of the alleged ineffectiveness of both Attorneys Rudenstein and Server during the litigation, and/or appeal from the denial, of his first PCRA petition. *See* Appellant's Brief at 21. However, the proceedings involving his first PCRA petition occurred from September of 2016 to November of 2020, and Appellant does not explain why he waited until September of 2022 to file the instant petition raising these ineffectiveness claims. Accordingly, even if they met one of the exceptions in section 9545(b)(1)(i)-(iii), he cannot prove that he raised these claims within one year of discovering them, as required by section 9545(b)(2).

[3] [Appellant] also suggests that he was found guilty of conspiracy "with multiple objectives." Brief for [Appellant] at 33. It is unclear what he means by this, but his sentencing documents do not reflect any increased penalty based on the nature of the conspiracy.

Commonwealth's Brief at 5-7.

We conclude that Judge Bronson's comprehensive opinion accurately disposes of the issues presented by Appellant, in conjunction with the additional, convincing arguments set forth by the Commonwealth.[5] Accordingly, we adopt Judge Bronson's opinion as our own and affirm the order denying Appellant's second, untimely PCRA petition for the reasons set forth therein.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/5/2024

---

[5] We also note that many of the claims that Appellant raises herein were also rejected by this Court in Quentin Salmond's appeal from the denial of his PCRA petition. *See Commonwealth v. Quentin Salmond*, No. 3037 EDA 2022, unpublished memorandum at 1-7.