J-A22020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :        PENNSYLVANIA
   :
          v.    :
   :
   :
JOSEPHUS SAWYER    :
   :
        Appellant    :    No. 2456 EDA 2024

Appeal from the Judgment of Sentence Entered August 16, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006135-2023

BEFORE:    LAZARUS, P.J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:             **FILED OCTOBER 15, 2025**

Josephus Sawyer ("Sawyer") appeals from the judgment of sentence imposed following his convictions of aggravated assault — serious bodily injury, criminal solicitation to commit aggravated assault, conspiracy to commit aggravated assault, simple assault, and recklessly endangering another person ("REAP").[1] We affirm.

The facts underlying this matter are largely undisputed. On July 14, 2023, Daryl Kennedy (the "Victim") returned to the Philadelphia condominium where he lived with Sawyer, his cousin. The Victim had been released from the hospital that day following an involuntary mental health commitment

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 902(a), 903(c), 2701(a), 2705.

pursuant to Section 302 of the Mental Health Procedures Act. *See* 50 P.S. § 7302.

Upon his return to the condominium, the Victim discovered that all his belongings were on the front porch. The Victim started to place his belongings back inside the residence, when Sawyer came downstairs and attempted to shut the door on the Victim. The Victim pushed his way inside and became involved in a physical altercation with Sawyer, which left Sawyer's nose and mouth bloody. Sawyer left the premises, and the Victim went to his bedroom on the third floor.

The Victim testified at trial that, shortly after the altercation with Sawyer, three "random people who [he had] never seen before" walked into his bedroom. N.T., 5/6/24, at 14. The intruders were two white men, and one man with darker skin who he believed to be Hispanic. They were wearing face coverings, and one of the white men held a handgun. The Victim testified that he grabbed his knife, but the intruders ordered him to drop it. The white man with the gun shot the Victim in his left thigh, and the darker-skinned man punched him. All three immediately ran out of the bedroom. The Victim was transported to the hospital, treated for a "through and through" bullet wound to his thigh, and released that evening. *Id*. at 48.

Surveillance footage collected from multiple cameras in the condominium complex and played at trial showed a red Jeep Cherokee park at the complex. *See* Exhibit C-2. Sawyer approached the vehicle and handed each of its three occupants a shirt, which they wrapped around their faces.

Sawyer then escorted them inside the condominium. Within ninety seconds, Sawyer and the three individuals exited the residence and drove off in the Jeep Cherokee.

After the Victim positively identified Sawyer in the surveillance footage, Philadelphia Police Detective Michael Fahy ("Detective Fahy") obtained an arrest warrant for Sawyer. Several days after the incident, but prior to executing the warrant, Detective Fahy and his partner escorted the Victim to the condominium so that he could recover some of his belongings. When they entered the residence, Sawyer, who was naked, jumped out of a second-floor window. After a brief foot pursuit, the detectives detained Sawyer. The detectives also recovered from the home the black shirt Sawyer was wearing in the surveillance footage.

The Commonwealth charged Sawyer with the above-listed crimes, and he proceeded to a non-jury trial. The defense presented two witnesses, Sawyer and his mother, Jebeh Kawah ("Kawah"). Kawah testified to the following. She had a "good" relationship with the Victim, who was "like a son to [her]." N.T., 5/6/24, at 55. The Victim had lived in the condominium with Sawyer for approximately six months prior to the shooting. The Victim and Sawyer had a history of arguing over domestic matters, and both suffered from mental health issues. Kawah and the Victim's grandmother had requested his recent involuntary commitment.

Kawah further testified to the following. Sawyer called her after the Victim returned to the condominium and engaged in a physical altercation with

Sawyer. Kawah then called the police and went to the complex. Police told her that the matter was "a domestic affair" and they could not "do anything until" she filed an action to evict the Victim. *Id*. at 63. Because it was a Saturday, Kawah could not initiate an eviction proceeding that day.

On cross-examination, Kawah admitted that Sawyer was very upset after getting "beaten up" by the Victim. *Id*. at 70-71. Kawah further indicated that she was not at the condominium complex at the time of the shooting, and Sawyer was still in the vicinity when she left.

Sawyer testified as follows. He was aware that his mother had previously informed the Victim that he should not return to the condominium after his commitment. Sawyer had a broken finger in his dominant hand at the time and therefore he could not fight back when the Victim pushed his way into the residence. Sawyer indicated that, in addition to a bloody nose, he also believed that he sustained a concussion in the altercation.

After Kawah's mother called the police and they indicated they could not eject the Victim, Sawyer did not "feel comfortable" with the Victim remaining in the residence, as he was worried that the Victim might "try to attack [him] again" while he was sleeping. *Id*. at 79. Sawyer called his friend Husain[2] and "told him what had happened, and [Husain] just said that he would talk to [the Victim] for me." *Id*. Sawyer stated that he did not "want it to get violent in any way because [the Victim was his] cousin." *Id*.

_____

[2] The record does not identify Husain by his full name.

Husain arrived shortly thereafter, and told Sawyer to meet him in a nearby parking lot and "bring . . . some shirts." *Id*. at 79-80, 84. Sawyer "had a couple of his friends [with him who Sawyer] didn't know." *Id*. at 80. Sawyer handed Husain and his two friends the shirts, which they tied around their faces. Sawyer then escorted them inside the residence, still believing that they would "try to get him to leave verbally" and the Victim would voluntarily "just decide to leave." *Id*. at 80-81. Sawyer went to his second-floor bedroom while the three males continued to the Victim's third-floor bedroom. After hearing the gunshot, Sawyer fled with Husain and his two friends in the Jeep Cherokee. Sawyer did not check on the Victim or call the police. He was not aware that the Victim had been shot until the following day.

Sawyer also introduced stipulated character evidence that, if called to testify, his mother, father, and grandmother would testify that he had an excellent reputation in the community as a law-abiding and peaceful person. The trial court found Sawyer guilty of all charges.

On August 16, 2024, the trial court imposed the sentence of eleven months and fifteen days to twenty-three months' incarceration, with immediate parole to house arrest, and a concurrent, aggregate five-year term

of probation.[3]  Sawyer filed a timely notice of appeal.  Both he and the trial

court complied with Pa.R.A.P. 1925.

Sawyer raises the following issues on appeal:

1. Was there insufficient evidence to convict . . . Sawyer of aggravated assault, simple assault, and [REAP] under an accomplice liability theory as the Commonwealth failed to prove that . . . Sawyer intended to promote or facilitate the possession of the gun, and its use to assault the [V]ictim, and that he aided or attempted to aid that criminal conduct in violation of 18 Pa.C.S.[A.] § 306?

2. Was there insufficient evidence to convict . . . Sawyer of aggravated assault, simple assault, [REAP], and conspiracy under a vicarious liability conspiracy theory as the Commonwealth failed to prove that . . . Sawyer had the intent of promoting or facilitating the possession of the gun, and its use to assault the [V]ictim, and that he entered into an agreement with the person who attacked the [V]ictim with the gun in violation of 18 Pa.C.S.[A.] § 903?

3. Was there insufficient evidence to convict . . . Sawyer of solicitation to commit aggravated assault as the Commonwealth failed to prove that . . . Sawyer intended to command, encourage or request that another person possess the gun or use it to assault the [V]ictim in violation of 18 Pa.C.S.[A.] § 902[?]

Sawyer's Brief at 3.

Each of Sawyer's appellate issues challenges the sufficiency of the

evidence with respect to his convictions.  Our review of a sufficiency claim is

well settled:

_____

[3] The trial court imposed the term of incarceration for aggravated assault, a five-year concurrent term of probation for criminal solicitation, and a two-year concurrent term of probation for REAP.  The court found that the conspiracy and simple assault charges merged.

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the factfinder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Scott*, 325 A.3d 844, 849 (Pa. Super. 2024) (citation and brackets omitted and italicization added).

In his first issue, Sawyer argues that the evidence was insufficient to convict him of aggravated assault, simple assault, and REAP under an accomplice liability theory. A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. A defendant's act of firing a handgun at another, even if the bullet "simply graze[s] the intended victim causing only superficial injury,"

is sufficient to prove the intent to cause serious bodily injury. ***Commonwealth v. Robinson***, 817 A.2d 1153, 1160 (Pa. Super. 2003).

An individual is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S. § 2701(a)(1). Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. Because "[t]he definition of 'serious bodily injury' includes within it 'bodily injury,'" simple assault is a lesser included offense of aggravated assault. ***Commonwealth v. Thomas***, 546 A.2d 116, 118 (Pa. Super. 1988).

"A person commits [REAP] if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S. § 2705. To sustain a REAP conviction, the Commonwealth must prove that the defendant "(1) possessed 'a *mens rea* [of] recklessness,' (2) committed a wrongful deed or guilty act ('*actus reus*'), and (3) created by such wrongful deed the danger of death or serious bodily injury to another person." ***Commonwealth v. Brockington***, 230 A.3d 1209, 1215 (Pa. Super. 2020) (citation omitted).

We have explained accomplice liability as follows:

An actor and his accomplice share equal responsibility for the criminal act if the accomplice acts with the intent of promoting or facilitating the commission of an offense and agrees or aids or attempts to aid such other person in either the planning or the commission of the offense. There is no minimum amount of assistance or contribution requirement, for it has long been established that intent of the parties is a consideration essential to establishing the crime of aiding and abetting a felony. Thus, even non-substantial assistance, if rendered with the intent of

promoting or facilitating the crime, is sufficient to establish complicity.

**Commonwealth v. Ratliff**, 328 A.3d 1042, 1053 (Pa. Super. 2024) (citation omitted); **see also** 18 Pa.C.S.A. § 306(b)(3), (c)(1) (setting forth requirements for accomplice liability).

Accomplice liability "is not confined to substantive crimes requiring a specific intention to bring about a particular result." **Commonwealth v. Roebuck**, 32 A.3d 613, 624 (Pa. 2011). Therefore, "[f]or offenses where a principal actor need not intend the result [described in the statute]" — such as offenses requiring a mental state of recklessness — "it is also not necessary for the accomplice to do so." **Id**. "[A] shared criminal intent between the principal and his accomplice may be inferred from a defendant's words or conduct or from the attendant circumstances." **Commonwealth v. Le**, 208 A.3d 960, 969 (Pa. 2019).

Sawyer argues that the evidence was insufficient to prove he committed aggravated assault, simple assault, and REAP because he "did nothing beyond conspire [with Husain] to scare or harass" the Victim "in an attempt to get him to leave the condominium." Sawyer's Brief at 11, 16. Sawyer avers that:

> There are no facts presented either directly or circumstantially, that [Sawyer] knew that anyone was carrying a gun, let alone that someone would use a gun, and just as importantly, there was no urging on his part or discussions, prior to the men confronting his cousin, that someone would cause physical injury, arm themselves, shoot or injure him.

**Id**. at 11-12 (citation omitted). Sawyer asserts that "accomplice liability is 'offense-specific' and requires an analysis of 'intent and conduct, not merely

- 9 -

results.'" *Id*. at 15 (*quoting* **Commonwealth v. Knox**, 105 A.3d 1194, 1196 (Pa. 2014)). Applying the proper standard, he avers that the evidence only showed that he was guilty "as an accomplice of harassment," and not any of the charged offenses. *Id*. at 16.

Addressing Sawyer's sufficiency challenge to his convictions collectively, the trial court found that the evidence was sufficient to support the finding of guilt:

> Accepted as true, the direct and circumstantial evidence in this case, including all reasonable inferences arising therefrom, demonstrated that [Sawyer] both conspired with, and aided, his cohorts in committing each of the offenses in this case. Beyond his clear motive, having just been badly beaten and bloodied by [the Victim, Sawyer] admitted that he was very angry and immediately solicited Husain for "help" with his cousin. [N.T., 5/6/24, at 87.] While [Sawyer] claimed that he merely wanted Husain to "talk" to [the Victim] "because that's my cousin," every aspect of the evidence indicated otherwise. [*Id*. at 79.] Indeed, Husain did not arrive or enter the residence by himself, he came with a cadre of assailants, one of whom was armed with a gun. Additionally, contrary to [Sawyer's] claim that he did not know others would be joining Husain, [Sawyer] did not bat an eye when Husain called upon his arrival and asked [Sawyer] to "bring . . . some shirts" (plural). [*Id*. at 79-80, 84.] Instead, [Sawyer] was complicit and — as clearly depicted on video — provided three shirts, one for each attacker, and watched as all three males applied them as face masks. It was plain that these men were not there to "verbally" persuade [the Victim], they were there to assault him. [*Id*. at 81.]
>
> Moreover, despite the presence of two allegedly unknown, masked men, [Sawyer] led all three of them into his residence, escorted them up the stairs, and directed them to [the Victim's] bedroom. Further, the males already had a gun drawn when they entered [the Victim's] bedroom — removing any doubt as to whether this was a cordial "sit down" meeting versus a planned attack. Indeed, the entire duration of the incident, which spanned

a total of [one] minute and [twenty-seven] seconds, further evidenced that this was an intentional assault.

Perhaps most damning to [Sawyer's] claim of innocence, however, were his actions immediately following the assault. Upon hearing the gunshot (and knowing that his cousin did not have a gun), [Sawyer] did not go upstairs to render aid to his . . . cousin or summon an ambulance — rather, he fled in unison with his cohorts outside the residence and into the getaway vehicle. These actions did not depict any concern by [Sawyer] whatsoever; indeed, combined with all the other evidence, they showed that [Sawyer] wanted the assault to occur.[FN]

---

[FN Sawyer's] actions also rendered his testimony incredible, which the [trial c]ourt, sitting as fact finder, was free to determine.

---

Finally, [Sawyer] manifested an unmistakable consciousness of guilt when he not merely eluded capture but jumped out of his second-floor window stark **naked** when detectives arrived the following week. Granted, while flight and consciousness of guilt without more do not establish accomplice liability, "those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction." **Commonwealth v. Rosetti**, 469 A.2d [1121,] 1123 [(Pa. Super. 1983)]; **see also Commonwealth v. Devine**, 26 A.3d 1139, 1147 (Pa. Super. 2011) ("[F]light, along with other circumstantial evidence, supports the inference of a criminal conspiracy.") (citations and internal quotations omitted).

In sum, accepted as true, the totality of the evidence in this case — direct, video and circumstantial — amply supported [Sawyer's] convictions.

Trial Court Opinion, 11/12/24, at 15-17 (emphasis in original).

Based on our review, we conclude that the evidence was sufficient to support Sawyer's convictions of aggravated assault, simple assault, and REAP. **See Scott**, 325 A.3d at 849. Sawyer does not dispute that the conduct of

- 11 -

Husain and his two confederates satisfied the elements of those crimes. Instead, he solely challenges whether the evidence showed he had the intent to promote or facilitate the commission of the charged crimes and he aided the assault of the Victim.

As the trial court ably explained in its opinion, the Commonwealth presented sufficient evidence to demonstrate Sawyer's guilt under an accomplice theory of liability. Sawyer admitted that he was angry with the Victim, wanted him to leave the condominium, and enlisted Husain to force him out of the residence. While Sawyer testified that he only wanted Husain to "verbally" confront the Victim and was unaware that Husain's compatriot brought a handgun, the trial court was within its authority as factfinder to find this testimony incredible. N.T., 5/6/24, at 81; *see also Scott*, 325 A.3d at 849. Sawyer's conduct captured on the surveillance video, of providing the three men with shirts that they tied around their heads as face coverings and leading them into the residence, further demonstrated his role in the assault of the Victim. *See* Exhibit C-2. Finally, Sawyer's flight after the shooting and again when detectives escorted the Victim back to the condominium support the trial court's finding that Sawyer intended to facilitate the assault on the Victim. *See Rosetti*, 469 A.2d at 1123.

Accordingly, the evidence showed beyond a reasonable doubt that Sawyer intended to promote and facilitate an attempt to cause serious bodily injury to the Victim by shooting a firearm at him and Sawyer aided his accomplices in that act by providing them with face coverings and leading

them into the condominium. **See Ratliff**, 328 A.3d at 1053. Therefore, the evidence was sufficient to prove Sawyer's guilt as an accomplice to aggravated assault, simple assault, and REAP. **See Robinson**, 817 A.2d at 1160; **see also Brockington**, 230 A.3d at 1215; **Thomas**, 546 A.2d at 118. No relief is due on Sawyer's first issue.

In his second issue, Sawyer challenges the sufficiency of the evidence with respect to his conviction for conspiracy to commit aggravated assault.[4] To sustain a conviction for criminal conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act was done in furtherance of the conspiracy." **Commonwealth v. Fisher**, 80 A.3d 1186, 1190 (Pa. 2013) (citation omitted); **see also** 18 Pa.C.S.A. § 903(a), (e).

"The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." **Commonwealth v. Gross**, 232 A.3d 819, 839 (Pa. Super. 2020) (*en banc*) (citation omitted). "[O]nce the trier of fact finds that there

---

[4] Sawyer also argues that the evidence was insufficient to prove his guilt of aggravated assault, simple assault, and REAP under a "co-conspirator vicarious liability theory" because accomplice liability under 18 Pa.C.S.A. § 306 is distinct from a conspiracy offense under 18 Pa.C.S.A. § 903. Sawyer's Brief at 20-21. As we have previously found that the evidence was sufficient to prove aggravated assault, simple assault, and REAP under traditional accomplice liability principles, **see supra**, we need not address Sawyer's separate sufficiency challenge regarding these offenses.

was an agreement and the [defendant] intentionally entered into the agreement, [the defendant] may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act." ***Commonwealth v. Reed***, 216 A.3d 1114, 1122 (Pa. Super. 2019) (citation omitted).

"As it is often difficult to prove an explicit or formal agreement, the agreement generally is established via circumstantial evidence, such as by the relations, conduct, or circumstances of the parties, or the overt acts on the part of co-conspirators." ***Le***, 208 A.3d at 969. "The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt." ***Commonwealth v. Johnson***, 180 A.3d 474, 479 (Pa. Super. 2018) (citation omitted).

Sawyer argues that the evidence did not prove that he entered into a criminal agreement or that he shared a criminal intent with his alleged conspirators. ***See Fisher***, 80 A.3d at 1190. Sawyer contends that the evidence showed at most an association with Husain, who did not personally shoot the Victim, but not the two men Husain brought with him. Sawyer's Brief at 18. Sawyer avers that he was not aware that one of the men who came with Husain possessed a handgun or intended to use it on the Victim. Therefore, Sawyer asserts that he "never had the intent of promoting or facilitating the possession of the gun, and its use of to assault the [V]ictim,

- 14 -

and that he never entered into an agreement with the person who attacked the [V]ictim with the gun." Sawyer's Brief at 19-20.

While Sawyer recognizes that he "supplied the actors with face coverings," he asserts that he did so solely "in an effort to threaten and menace" the Victim, not to shoot him. *Id*. at 19. Sawyer contends that the act of providing face coverings did "not equate to supplying a firearm," and did not show his knowledge that one of Husain's friends had a gun, nor that he entered into an agreement to attack the Victim with the gun. *Id*. Sawyer further asserts that his fleeing the condominium when detectives escorted the Victim to the residence did not show consciousness of guilt but rather "was a reaction from a young man in his twenties, who has mental health problems [and] who is scared that the authorities would try to hold him responsible for the shooting." *Id*.

Upon review, we conclude that the evidence was sufficient to support Sawyer's conspiracy to commit aggravated assault conviction. *See Scott*, 325 A.3d at 849. The trial court detailed the ample direct and circumstantial evidence supporting its finding that Sawyer entered into an agreement with his conspirators with the shared intent of inflicting serious bodily injury on the Victim. *See Fisher*, 80 A.3d at 1190. This evidence included Sawyer calling Husain to remove the Victim from the condominium after the earlier altercation; Sawyer meeting Husain and his compatriots outside and bringing shirts that the assailants used for face coverings; and Sawyer leading the three men into the residence where the assault occurred seconds later. *See*

*Commonwealth v. Holston*, 211 A.3d 1264, 1278 (Pa. Super. 2019) (*en banc*) (noting that an association between the alleged conspirators and presence at the scene of the crime are factors indicative of a corrupt confederation). In addition, Sawyer's conduct after the shooting as he fled from the condominium with the three assailants and fled when detectives arrived at the residence several days later added to the "web of evidence" showing that he entered into an agreement to assault the Victim. *Johnson*, 180 A.3d at 479 (citation omitted); *see also Devine*, 26 A.3d at 1147 (providing that a defendant's flight may be circumstantial evidence supporting the inference that he entered into a criminal conspiracy).

While Sawyer argues that he intended only for Husain to harass the Victim and not assault him, this argument is based on his own testimony, which the trial court, in its province as factfinder, rejected as incredible. *See Scott*, 325 A.3d at 849. Furthermore, the fact that Sawyer may not have known Husain's friends before the assault does not defeat his conspiracy conviction, as a defendant need not know the identity of all the other conspirators to be liable for the acts undertaken in furtherance of the conspiracy. *See* 18 Pa.C.S.A. § 903(b) (providing that, if a member of a criminal conspiracy "knows that a person with whom he conspires to commit a crime has conspired with another person or persons to commit the same crime, he is guilty of conspiring with such other person or persons, to commit such crime whether or not he knows their identity"). Therefore, as we

- 16 -

conclude the Commonwealth proved Sawyer's guilt as to the conspiracy offense beyond a reasonable doubt, his second issue merits no relief.

In his final issue, Sawyer challenges the sufficiency of the evidence with respect to his conviction for criminal solicitation to commit aggravated assault. To prove the offense of criminal solicitation, the Commonwealth must show that the accused "commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission." 18 Pa.C.S.A. § 902(a). Solicitation further requires proof that the defendant acts "with the intent of promoting or facilitating [the] commission" of the underlying crimes. *Id*.; *see also Commonwealth v. Hacker*, 15 A.3d 333, 336 (Pa. 2011) (stating that a defendant must act "with the intent to accomplish the *acts* which comprise the crime, not necessarily with intent specific to all the *elements* of that crime") (emphasis in original).

Sawyer argues that a proper "offense-specific . . . analysis of [his] intent and conduct" reveals that the evidence was insufficient to support his criminal solicitation conviction. Similar to his arguments above, Sawyer contends that the evidence showed only that he "asked Husain to talk to the [Victim] in an attempt to leave the condominium" and not bring a handgun or use it to harm the Victim. Sawyer's Brief at 23. In the absence of evidence that he commanded, encouraged, or requested Husain or his confederates assault the

- 17 -

Victim, or intended to do so, Sawyer avers that this Court must vacate his solicitation conviction.

After careful review, we find that the evidence was sufficient to support Sawyer's criminal solicitation conviction. *See Scott*, 325 A.3d at 849. Here, Sawyer testified himself that he called Husain and asked him to remove the Victim from the condominium. *See* N.T., 5/6/24, at 79-81. Although Sawyer claims that he only asked Husain to "verbally" persuade the Victim to leave, the trial court was free to discredit Sawyer's self-interested assertions, as the attendant circumstances demonstrated otherwise — that Sawyer enlisted Husain to use force to remove the Victim. *Id*. at 81; *see also Scott*, 325 A.3d at 849. Thus, because the evidence was sufficient to support Sawyer's solicitation conviction, we similarly conclude that his final issue is meritless, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/15/2025